# ASTRUP *v.* IMMIGRATION AND NATURALIZATION SERVICE

No. 840.   Argued April 20, 1971—Decided May 24, 1971

BLACK, J., delivered the opinion for a unanimous Court.

*Paul N. Halvonik* argued the cause for petitioner. With him on the brief was *Marshall W. Krause.*

*Richard B. Stone* argued the cause for respondent. With him on the brief were *Solicitor General Griswold, Assistant Attorney General Wilson,* and *Charles Gordon.*

MR. JUSTICE BLACK delivered the opinion of the Court.

The issue in this case is exceedingly simple.   By signing SSS Form 130—Application by Alien for Relief from Training and Service in the Armed Forces—the peti-

tioner, Ib Otto Astrup, a native of Denmark, agreed to give up his right to become an American citizen, and in exchange, the United States, pursuant to § 4 (a) of the Selective Service Act of 1948, 62 Stat. 605, 50 U. S. C. App. § 454 (a) (1946 ed., Supp. III), agreed to give up the right to induct Astrup into the United States armed forces. Congress later repealed the law under which Astrup was exempted from military service, reneging on its part of the bargain with him.[1] Universal Military Training and Service Act § 4 (a), 65 Stat. 76, 50 U. S. C. App. § 454 (a) (1952 ed.). Thereafter the Selective Service System attempted to draft Astrup and would have succeeded in putting him into uniform but for the fact that he was found to be physically unfit for the draft. Later, when Astrup decided that he would like to become an American citizen, the Government attempted to enforce Astrup's promise even though it was unwilling to keep its own promise. When Astrup petitioned for naturalization, the United States District Court for the Northern District of California denied his petition on the ground that he was debarred from citizenship. The Court of Appeals for the Ninth Circuit affirmed. 432 F. 2d 438 (1970). We granted Astrup's petition for certiorari, 400 U. S. 1008 (1971), and now reverse.

---

[1] Astrup was lawfully admitted to the United States for permanent residence on February 20, 1950. On November 14, 1950, he executed SSS Form 130, requesting an exemption from military service on the ground of alienage. At that time the Selective Service Act of 1948, § 4 (a), 62 Stat. 605, 50 U. S. C. App. § 454 (a) (1946 ed., Supp. III), provided such an exemption for any alien. The Universal Military Training and Service Act § 4 (a), 65 Stat. 76, 50 U. S. C. App. § 454 (a) (1952 ed.), which became effective June 19, 1951, amended the earlier provision relating to exemptions for aliens so that the exemption was not available to aliens who were permanent residents of this country.

In support of the decision below the United States emphasizes the fact that Astrup admitted having read a notice proclaiming that:

> "Any citizen of a foreign country . . . shall be relieved from liability for training and service under this title if, prior to his induction into the armed forces, he has made application to be relieved from such liability . . . ; but any person who makes such application shall thereafter be debarred from becoming a citizen of the United States." Form SSS 130, quoting Selective Service Act of 1948, § 4 (a), 62 Stat. 606, 50 U. S. C. App. § 454 (a) (1946 ed., Supp. III).

He further admitted having signed a statement saying, "I understand that I will forever lose my rights to become a citizen of the United States . . . ." Upon the basis of these statements and § 4 (a) of the Selective Service Act of 1948, the United States argues that the case is controlled by our decision in *Ceballos* v. *Shaughnessy,* 352 U. S. 599 (1957), in which we enforced similar citizenship debarment provisions in a deportation case arising under the Immigration Act of 1917, § 19 (c), 39 Stat. 889, as amended, 54 Stat. 672, 62 Stat. 1206, 8 U. S. C. § 155 (c) (1946 ed., Supp. V). *Ceballos,* however, does not govern this case. In *Ceballos* the Court specifically held that § 315 of the Immigration and Nationality Act of 1952, 66 Stat. 242, 8 U. S. C. § 1426, was inapplicable because of the effective date of the 1952 Act and because § 315 was expressly inapplicable to deportation proceedings under the 1917 Act. 352 U. S., at 606 n. 17.

Astrup, unlike Ceballos, is not involved in a deportation proceeding under the Immigration Act of 1917 and consequently the saving clause of the Immigration and Nationality Act of 1952, § 405, 66 Stat. 280, is inappli-

cable.[2]   See note following 8 U. S. C. § 1101.   Moreover, Astrup petitioned for naturalization under § 316 of the 1952 Act.   Therefore, § 315 of the 1952 Act, not § 4 (a) of the Selective Service Act of 1948, determines the effect to be given to Astrup's 1950 application for exemption from military service.   Section 315 provides:

> "Notwithstanding the provisions of section 405 (b) of this Act, any alien who applies or has applied for exemption or discharge from training or service in the Armed Forces or in the National Security Training Corps of the United States on the ground that he is an alien, *and is or was relieved or discharged from such training or service on such ground,* shall be permanently ineligible to become a citizen of the United States."   66 Stat. 242, 8 U. S. C. § 1426. (Emphasis added.)

This is a two-pronged prerequisite for the loss of eligibility for United States citizenship.   The alien must be one who "applies or has applied for exemption or discharge" from military service and "is or was relieved or

---

[2] The United States argues that the saving clause of the 1952 Act is applicable, citing *United States* v. *Menasche,* 348 U. S. 528 (1955), and *Shomberg* v. *United States,* 348 U. S. 540 (1955).   In *Menasche* the Court held that an alien who had filed a declaration of intention to become an American citizen had a "right in the process of acquisition" preserved by the saving clause which provided: "Nothing contained in [the 1952] Act, unless otherwise specifically provided therein, shall be construed to affect the validity of any declaration of intention . . . ."   The Court there found nothing in the 1952 Act that specifically nullified Menasche's declaration.   In *Shomberg,* on the other hand, the Court found in § 318 of the 1952 Act, 66 Stat. 244, 8 U. S. C. § 1429, a specific bar to final determination of a naturalization petition by an alien against whom there was an outstanding deportation proceeding.   This case is more like *Shomberg* than *Menasche* in that § 315 is addressed to events which may have occurred before the effective date of the 1952 Act and refers specifically to the saving clause as, at least partially, inapplicable.

discharged" from that service. There is no question that Astrup applied for an exemption. The United States argues that he was temporarily released from military service but recognizes that the release was not permanent. And even the Government is forced to concede that *temporary* release from military service is not by itself sufficient to debar an alien from a later claim to naturalized citizenship, because the Government recognizes the correctness of the Second Circuit's decision in *United States v. Hoellger,* 273 F. 2d 760 (1960), that if an alien is once relieved from service but is later compelled to perform military service the bar to citizenship does not arise.

Other courts have distinguished the *Hoellger* holding from the situation where an alien is once relieved from military service but later reclassified for service which he never performs because of intervening circumstances such as physical unfitness. See *Lapenieks* v. *Immigration and Naturalization Service,* 389 F. 2d 343 (1968); *United States* v. *Hoellger, supra,* at 762 n. 2. However, there is nothing in the language of § 315 which leads us to believe that Congress intended such harsh and bizarre consequences to flow from an individual's failure to pass a physical examination.[3] We think that Congress used the words "is or was relieved" to provide that an alien who requests exemption from the military service be

---

[3] We find no merit in the Government's contention that Astrup was *effectively* relieved from military service on account of alienage merely because he was found to be medically qualified for the draft on October 11, 1950, before he claimed an exemption and was later found to be medically unfit for the draft, after the Government repudiated its part of the bargain. The quality of pre-induction physical examinations varies widely and the standards of medical fitness are frequently revised. In any event, the examination is primarily for the benefit of the United States, insuring that those inducted are physically capable of performing adequately and that the United States does not become legally obligated to provide medical treatment for conditions not caused by military service.

held to his agreement to relinquish all claims to naturalized citizenship *only* when the Government abides by its part of the agreement and completely exempts him from service in our armed forces.[4]

Consequently, the United States District Court erred in denying Astrup's petition for naturalization on the ground that he was barred from citizenship because he had once claimed an exemption from military service as an alien. The decision of the Court of Appeals for the Ninth Circuit affirming the District Court is reversed and the case is remanded to the District Court for further proceedings on Astrup's petition for naturalization.

*It is so ordered.*

---

[4] Cf. *Federal Power Comm'n* v. *Tuscarora Indian Nation,* 362 U. S. 99, 142 (1960) (BLACK, J., dissenting): "Great nations, like great men, should keep their word."