**UNITED STATES of America**
**v.**
**MAPLEWOOD POULTRY COMPANY.**

**UNITED STATES of America**
**v.**
**POULTRY PROCESSING, INC.**
**Crim. A. Nos. 5290, 5293, 5291, 5299.**

United States District Court,
D. Maine, N. D.
June 10, 1971.

ing firms located at Belfast, Maine. Each indictment contains several counts charging violations of Section 13 of the Rivers and Harbors Act of 1899, 33 U. S.C. § 407 (the Rivers and Harbors Act), by the discharge from defendant's plant of refuse matter (animal blood, fat, entrails and chicken feathers) into the waters of Penobscot Bay. Defendants have entered pleas of nolo contendere to all of the counts in each indictment. They now move this Court to arrest judgment under F.R.Crim.P. 34 on the ground that the indictments do not charge an offense against the United States. In support of their motions, defendants make two contentions:

(1) That the Rivers and Harbors Act was never intended, and does not apply, to industrial pollution of a continuing nature which does not result in an obstruction to navigation;[1] and

(2) That to the extent the Rivers and Harbors Act may have been applicable to continuing industrial pollution which does not impair navigation, it has been superseded by the comprehensive water quality standards provisions of the Federal Water Pollution Control Act, as amended, 33 U.S.C. § 1151 et seq. (1970) (the FWPCA).

For the reasons to be briefly stated, defendants' motions are denied.

Peter Mills, U. S. Atty., John B. Wlodkowski, Asst. U. S. Atty., Portland, Me., for plaintiff.

Barnett I. Shur, Gregory A. Tselikis, Portland, Me., Irving Isaacson, Lewiston, Me., for defendants.

## MEMORANDUM OF OPINION AND ORDER OF THE COURT

GIGNOUX, District Judge.

On October 27 and again on November 24, 1970, the grand jury for this District returned the instant indictments against defendants, two poultry process-

■ (1) The Rivers and Harbors Act, in pertinent part, prohibits the discharge into navigable water of

---

1. For the purposes of the present motions, the parties have stipulated that the operation of defendants' plants has resulted in the continuous discharge of industrial pollutants which do not impede navigation. This procedure, by which the purely legal defense which defendants assert to the present charges has been presented by motions in arrest of judgment, following pleas of nolo contendere, and a stipulation of obvious uncontroverted fact, of which the Court might in any event take judicial notice, was suggested by the Court and agreed to by the parties at pretrial conference, in order to avoid the time and expense of a trial on the merits. The government's attempt in opposition to the present motions to repudiate this agreement on the authority of United States v. Norris, 281 U.S. 619, 50 S.Ct. 424, 74 L.Ed. 1076 (1930) bespeaks the type of governmental bad faith which caused the Supreme Court recently to adopt Mr. Justice Black's dissenting comment in Federal Power Commission v. Tuscarora Indian Nation, 362 U.S. 99, 142, 80 S.Ct. 543, 567, 4 L.Ed.2d 584 (1960): " 'Great nations, like great men, should keep their word.' " Astrup v. Immigration and Naturalization Service, 402 U.S. 509 n. 4, 91 S.Ct. 1583, 29 L.Ed.2d 68 (May 24, 1971).

any refuse matter of any kind or description whatever other than that flowing from streets and sewers and passing therefrom in a liquid state * * *. 33 U.S.C. § 407.

Apart from the fact that the statutory language "any refuse matter of any kind or description whatever" plainly embraces all refuse matter regardless of its source, it is late in the day for defendants to argue for the restrictive interpretation which they now urge. It has long since been authoritatively settled that the Act prohibits *all* discharges of polluting matter (other than sewage) into navigable waters, regardless of its source or continuing nature and irrespective of its effect upon navigation. United States v. Standard Oil Co., 384 U.S. 224, 86 S.Ct. 1427, 16 L.Ed.2d 492 (1966); United States v. Republic Steel Corp., 362 U.S. 482, 80 S.Ct. 884, 4 L.Ed.2d 903 (1960); United States v. Esso Standard Oil Co., 375 F.2d 621 (3rd Cir. 1967); United States v. Ballard Oil Co., 195 F.2d 369 (2d Cir. 1952); La Merced, 84 F.2d 444 (9th Cir. 1936).[2]

■ (2) Defendants' contention that the prohibitions of the Rivers and Harbors Act have been superseded by the all-inclusive pollution control provisions of the FWPCA is sufficiently answered by reference to Section 24 of the latter Act, 33 U.S.C. § 1174 (1970), which specifically provides that the Act:

> shall not be construed as * * * affecting or impairing the provisions of [Section] 407 * * * of this title * * *.

The Congress could not have stated more clearly that its intent in enacting the FWPCA was not to modify or repeal the existing provisions of the Rivers and Harbors Act.

■ In holding that the instant indictments state an offense under the Rivers and Harbors Act, this Court finds itself in accord with at least three other courts which have recently considered and rejected arguments substantially identical to those made by the present defendants. United States v. Interlake Steel Corp., 297 F.Supp. 912, 916–917 (N.D.Ill.1969); United States v. Vulcan Materials Co. et al., 320 F.Supp. 1378 (D.N.J. September 24, 1970); United States v. United States Steel Corp., Crim.No. 70 H.Cr. 12 (N.D.Ind. November 10, 1970). *Cf.* United States v. Florida Power and Light Co., 311 F.Supp. 1391 (S.D.Fla.1970). The Court has great sympathy with the plight of an industry which, while endeavoring in good faith to comply with water quality standards approved by the Secretary of the Interior under the FWPCA, is subjected to a criminal prosecution instituted by the Department of Justice under the Rivers and Harbors Act. But it is beyond the power of this Court either to repeal an act of Congress or to overrule decisions of the Supreme Court. *See* United States v. Interlake Steel Corp., *supra,* 297 F.Supp. at 916; United States v. United States Steel Corp., *supra* (Memorandum opinion p. 6).

■ The indictments state an offense against the United States. Defendants' motions in arrest of judgment are denied.

It is so ordered.

* * * * *

The word "refuse" includes all foreign substances and pollutants apart from those "flowing from streets and sewers and passing therefrom in a liquid state" into the watercourse. *Id.* at 230, 86 S.Ct. at 1430.

2. Thus, in the *Standard Oil Co.* case, the Supreme Court observed:

> More comprehensive language would be difficult to select. The word "refuse" does not stand alone; the "refuse" banned is "of any kind or description whatever," apart from the one exception noted. 384 U.S. at 229, 86 S.Ct. at 1430.