### In the Matter of the Naturalization Petition of Anthony CARRELLI.

#### No. 79 C 81.

United States District Court, E. D. New York.

Feb. 22, 1979.

---

Fried, Fragomen, Del Rey, Bernsen & O'Rourke, P. C., New York City by Martin L. Rothstein, New York City, for petitioner.

Immigration and Naturalization Service by Kenneth S. Hurewitz, for respondent.

## MEMORANDUM AND ORDER

SIFTON, District Judge.

Anthony Carrelli, a twenty-eight year old native and citizen of Italy, who was admitted to the United States as a permanent resident alien on November 10, 1960, and who has resided continuously in this country since that time, has filed a petition for naturalization under Section 316(a) of the Immigration and Nationality Act, 8 U.S.C. § 1427(a). A designated naturalization examiner of the Immigration and Naturalization Service has recommended that the "pe-

tition for naturalization be denied on the grounds that petitioner has not established that he is not barred from naturalization by virtue of the provisions of Section 315 of the Immigration and Naturalization [sic] Act [8 U.S.C. § 1426]," which provides in pertinent part that:

"(a) Notwithstanding the provisions of section 405(b) of this Act, any alien who applies or has applied for exemption, or discharge from training or service in the Armed Forces or in the National Security Training Corps of the United States on the ground that he is an alien, and is or was relieved or discharged from such training or service on such ground shall be permanently ineligible to become a citizen of the United States."

For the reasons which follow, this Court finds that in the circumstances of this case Section 315 does not act as a bar to naturalization and that the instant petition for naturalization should be granted.

I

The record of the preliminary examination by the Immigration and Naturalization Service, the report of the designated naturalization examiner and the undisputed facts contained in the papers submitted by petitioner to this Court indicate the following relevant facts.

Petitioner first registered with the Selective Service when he was eighteen years old and at that time was given a student status. Subsequently, in either late 1969 or early 1970, petitioner was classified I–A, the classification given to registrants immediately available for induction, and following a pre-induction physical examination, he received an induction notice. Thereafter, on February 26, 1970 petitioner filed with his local board a form entitled "Request by Permanent Resident Alien for Relief from Training and Service in the Armed Forces of the United States Pursuant to Treaty." That form, which was signed by petitioner, recited that there was in effect a treaty between the United States and Italy under which Italian nationals were exempt from military service while in the United States

and further set forth *in toto* the provisions of Section 315 of the Immigration and Nationality Act, 8 U.S.C. § 1426, and recited that petitioner had read and understood that section. The designated naturalization examiner found that at the time he executed the form request for relief petitioner was an intelligent person who understood the English language and that petitioner understood the meaning of the request for exemption.

After petitioner filed the request for exemption, the earlier induction notice was cancelled and issuance of a further induction notice was postponed. Petitioner's notification of these actions apparently consisted of a "Postponement of Induction" notice dated April 16, 1970. However, petitioner remained in classification I–A for almost two years after he filed his request for exemption until February 24, 1972 at which time he was given a IV–C classification as a permanent resident alien exempt from military service. Petitioner asserts that, after cancellation of his one induction notice, but while being kept in classification I–A, he remained apprehensive about his possible induction and that he made repeated requests to the government for clarification of his status but received no response to those requests for clarification. In at least partial substantiation of that assertion, the record indicates that in a letter dated April 22, 1970, petitioner wrote to his local board requesting "prompt clarification of the 'Postponement of Induction' notice dated 4/16/70." The record does not reflect that there was ever any response to petitioner's letter.

During the approximately two-year period following his request for exemption while petitioner remained in classification I–A, the United States Government instituted a new random selection procedure for selective service, commonly referred to as the lottery system. Under that system a registrant between the ages of nineteen and twenty-six classified as I–A was placed in a first-priority selection group for essentially only one year. *See* 32 C.F.R. § 1631.-7(c)(2) (1970), (1971). Registrants were

called from this first-priority selection group in the order of their random selection number assigned by lottery. *See* 32 C.F.R. § 1631.5 (1970), (1971). If after that one-year period a registrant had not been called because his random selection number had not been reached, that individual would be dropped to a lower priority selection group. *See* 32 C.F.R. § 1631.7(a)(3)(i) and (ii) (1970), 32 C.F.R. § 1631.7(c)(3) and (d)(2), (3) (1971). As was stated by the naturalization examiner, "this lottery system effectively relieved anyone from military service whose number was not reached within the one year period in which he was in this first priority group." According to the above procedures, petitioner at the time he received his IV–C exemption in February 1972, would no longer have been in a first-priority selection group but would have been in a lower priority selection group and thus would have been effectively relieved from military service.[1]

## II

Section 315(a) of the Immigration and Nationality Act, 8 U.S.C. § 1426(a), sets forth a two-pronged requirement before an alien may be deemed permanently ineligible for United States citizenship. First, the alien must be one who "applies or has applied for exemption or discharge" from military service. Second, the alien must be one who "is or was relieved or discharged" from that service. *Astrup v. Immigration and Naturalization Service,* 402 U.S. 509, 91 S.Ct. 1583, 29 L.Ed.2d 68 (1971). There is no question that petitioner applied for exemption from military service on the ground of his alienage. The issue before this Court is whether the second prong of

the requirements of Section 315(a) has been established in such a manner that the permanent bar to United States citizenship may properly be invoked by the government against the petitioner.[2]

In the leading case of *Astrup v. Immigration and Naturalization Service, supra,* the Supreme Court discussed the statutory provisions relevant to an alien's exemption from military service as creating a contract, a bargain between the parties. Focusing on the second prong of the requirements of Section 315(a), the Court stated:

"We think 'that Congress used the words 'is or was relieved' to provide that an alien who requests exemption from the military service be held to his agreement to relinquish all claims to naturalized citizenship *only* when the Government abides by its part of the agreement and completely exempts him from service in our armed forces."

402 U.S. at 513–14, 91 S.Ct. at 1585 (emphasis in original).

 Under the principles of *Astrup, supra,* the case law makes clear it is not enough to invoke the citizenship bar for the government to grant an alien a *de facto* exemption from or postponement of military service. Only by giving the alien permanent, total exemption from military service can the government fulfill its part of the statutory bargain and consequently invoke the bar to citizenship set forth in Section 315(a). *See In re Rego's Petition,* 289 F.2d 174 (3d Cir. 1961); *In re Chrambach,* 346 F.Supp. 362, 368 (D.Md.1972); *In re Naturalization of Sheehan,* Petition No. 795515 (S.D.N.Y., April 21, 1975); *In re Mincheff,* 13 I. & N.Dec. 715 (1971). Reten-

---

1. Petitioner asserts that his lottery number was not reached during the year he was in the first-priority selection group. The report of the naturalization examiner contains no express finding on that issue. However, the relevant regulations indicate that, in any event, petitioner, who had a I–A classification in calendar year 1970, would have been in a lower priority selection group by February 1972 when petitioner finally received his IV–C exemption. *See* 32 C.F.R. § 1631.6 (1972). And the report of the naturalization examiner implicitly ac-

cepts the proposition that petitioner was in a lower priority selection group in February 1972 when he received his IV–C exemption.

2. If petitioner is found subject to the bar against citizenship imposed by Section 315, a related consequence is that, as an alien ineligible for citizenship, he will, thereafter, be excludable should he leave the United States and attempt to return as an immigrant. *See* 42 Op.Atty.Gen.No. 28 (1968); 8 U.S.C. § 1182(a)(22).

tion of an alien in classification I–A is inconsistent with the type of permanent, total exemption from military service envisioned by *Astrup, supra. In re Naturalization of Sheehan, supra; In re Mincheff, supra.* Accordingly, in the instant case, the government cannot be said to have fulfilled its part of the statutory bargain by cancelling petitioner's one induction notice and thereafter postponing petitioner's induction during the period through February 1972 when petitioner finally received his IV–C exemption, because throughout that period petitioner continued to be classified I–A.[3] Thus, the naturalization examiner correctly found that petitioner may not be barred from citizenship based on the government's actions prior to February 1972.[4]

The naturalization examiner also concluded that the petitioner should be denied citizenship because in February 1972 the government classified him IV–C, thereby granting him a permanent exemption from military service. However, the fact that an alien who has requested an exemption from service is at some point given a IV–C classification does not necessarily establish that, as the naturalization examiner asserts is true in this case, the government has fully complied with its part of the statutory bargain. *See In re Naturalization of Sheehan, supra.* To determine whether the

government has performed its part of the agreement one must look at the circumstances under which the IV–C exemption was granted in a particular case.

*In re Naturalization of Sheehan, supra,* was an action seeking to vacate an earlier order which had denied Sheehan's petition for naturalization. Judge Tenney held that the petitioner had shown no basis for invoking the provisions of Rule 60(b)(5) or 60(b)(6), Fed.R.Civ.P., and, therefore, denied Sheehan's request for relief. However, the court stated that it reached that conclusion "with great regret" because in its view it was clear that the earlier decision denying Sheehan's petition for naturalization had been in error.

Judge Tenney's opinion includes a complete statement of the facts relevant to Sheehan's naturalization petition and a full analysis of the merits of that earlier petition based on the applicable case law. Briefly, Sheehan was a permanent resident alien who after being classified I–A applied for exemption from military service pursuant to the provisions of a treaty between the United States and Ireland. Following his application for exemption, Sheehan was not reclassified IV–C, but rather remained in classification I–A, his local draft board merely noting that his induction was post-

---

**3.** Although not alluded to either in the report of the naturalization examiner or in the papers submitted by petitioner to this Court, it appears that at the time petitioner submitted his request for exemption from military service and in light of the 1951 amendments to the Selective Service Act, there was still, despite the 1968 expression of opinion on the subject by the United States Attorney General, *see* 42 Op. Atty.Gen.No. 28 (1968), a question as to the Selective Service System's authority to grant a permanent exemption from military service to a permanent resident alien such as the petitioner. Permanent resident aliens were excluded from those eligible for IV–C classification at that time, *see* 32 C.F.R. § 1622.42 (1970), and in a letter dated March 20, 1970, the Acting Director of the Selective Service System informed the Director of Selective Service, New York, that petitioner "does not qualify for Class IV–C." This Court mentions these apparent facts to stress that they do not in any way alter the conclusion that the government's actions in cancelling the one induction notice and then postponing the issuance of further induction

notices during the period after petitioner's request for exemption through February 1972 did not accord petitioner the type of complete relief from military service which alone would entitle the government to invoke the statutory bar to citizenship. As was stated in *In re Mincheff, supra* at 719:

> "In granting him [a] lesser form of relief, the selective service system gave him as much as it felt it had power to give under the law; but this was substantially short of the permanent exemption which alone can constitute effective relief under the court decisions."

**4.** The naturalization examiner in the first sentence of his third conclusion of law states, "That by not drafting petitioner the government did not fulfill its part of the contract." That conclusion of law then goes on to recite the naturalization examiner's belief that the government performed its part of the bargain by classifying petitioner IV–C in February 1972.

poned. Approximately a year and one-half after his request for exemption, Sheehan filed a petition for naturalization, which was opposed by the naturalization examiner on the basis of Section 315. Sheehan did not appear at the final hearing on his petition and the court adopted the naturalization examiner's recommendation. After the denial of Sheehan's petition in February 1972, Sheehan was reclassified IV–C. By that time Sheehan had passed his twenty-sixth birthday and was, therefore, beyond the age of draft liability. Difficulties arose when Sheehan attempted to re-enter this country after a trip to Ireland.

Judge Tenney stated that the order denying Sheehan's petition for naturalization had been in error because rather than granting Sheehan the total relief envisioned in *Astrup, supra,* and its progeny, the government had simply postponed Sheehan's induction while retaining him in classification I–A. Judge Tenney further noted that Sheehan had not been placed in Class IV–C until after he had passed the maximum age of liability.

The designated naturalization examiner on the instant petition asserts that the situation here presented is different from that in *In re Naturalization of Sheehan, supra,* because at the time petitioner Carrelli was reclassified IV–C he was still within the age of liability for induction. However, the fact of the matter is that in the instant case, as in *In re Naturalization of Sheehan, supra,* there had been a drastic change in circumstances by the time the government finally granted the permanent resident alien a IV–C exemption from military service. In the instant case the drastic change in circumstances, rather than consisting of the maturing of the permanent resident alien to an age beyond the maximum age of liability for induction, was created by the institution of the new random selection procedure for selective service and consisted of the fact that under the new random selection procedures petitioner had been effectively relieved of military service.

Analyzing the situation thus created in terms of general principles of contract law, as is suggested by *Astrup, supra,* this Court finds that in February 1972 the government could not reasonably have assumed that petitioner would still want to be a party to the agreement entered upon two years earlier when petitioner had filed his request for exemption from military service. In view of the drastic change in circumstances from those contemplated at the time the petitioner applied for the exemption, and considering as well the substantial lapse of time since that application and the harsh consequences attendant upon satisfaction of petitioner's request,[5] of which consequences the government was well aware, this Court believes that before finally undertaking to perform its part of the agreement the government, at a minimum, should have inquired of petitioner whether he still wished to have the earlier bargain completed under the existing terms. Implicit in every contract unless otherwise provided is a promise of reasonably prompt performance. Considering the drastic change in circumstances which characterized the instant case, this Court would be hard-pressed to find that the grant of permanent exemption from military service to petitioner almost two years after his initial request for exemption represented reasonably prompt performance by the government of its part of the statutory bargain.

Accordingly, this Court finds that in the circumstances of the instant case Section 315 does not act as a bar to naturalization. The petition for naturalization is granted and the Immigration and Naturalization Service is directed to submit to this Court within seven (7) days from the date of this opinion an appropriate judgment.

SO ORDERED.

---

5. See note 2, *supra.*