**PETITION for Naturalization of Hector Raul JAVKIN.**

**Petition No. 222861.**

United States District Court,
N. D. California.

Oct. 30, 1980.

Donald L. Ungar, San Francisco, Cal., for petitioner.

Allen B. Lee, San Francisco, Cal., for Immigration Naturalization Service.

## ORDER

CONTI, District Judge.

### INTRODUCTION

Petitioner is a native of Argentina who has been a permanent resident of the United States since 1956. In 1965 he registered with the Selective Service and was classified II–S, receiving a student deferment. In March 1967, he was reclassified I–A and ordered to appear for a pre–induction physical the following month. Subsequent to his physical examination, he received a notice of induction. Petitioner then invoked a treaty into which the United States and Argentina had entered that rendered him exempt from military service in this country. He was given notice at that time that his request for an alienage exemption would render him permanently ineligible to become a citizen of the United States. Petitioner indicated in writing that he understood that his opportunity to become a citizen would be forfeit as a consequence of his actions and he does not now contest that fact.

As a result of his request for an exemption, Petitioner's induction was cancelled. No further action was taken with regard to his eligibility for the draft until 1972, at which time he was informed that he had been given a IV–C classification—the alienage exemption.[1] At no time subsequent to filing for an exemption was Petitioner called upon to serve in the military.

In 1974, Petitioner filed the naturalization petition that is the subject of these proceedings. The naturalization examiner has recommended that the petition be denied on the basis of section 315 of the Immigration and Nationality Act (the "Act"). 8 U.S.C. § 1426. Section 315 provides that:

1. During the intervening period, there was some confusion as to the availability of a IV–C classification for resident aliens seeking an alienage exemption from the draft. This confusion did not seem to affect whether such an exemption would be honored under the treaties into which the United States had entered, but rather focused upon whether the IV–C class was an appropriate one in which to place resi-

"(a) . . . any alien who applies or has applied for an exemption or discharge from training or service in the Armed Forces or in the National Security Training Corps of the United States on the grounds that he is an alien, and is or was relieved from such training or service on such ground, shall be permanently ineligible to become a citizen of the United States."

This section is quoted in its entirety on the form that Petitioner signed.

To support his petition for naturalization, Petitioner claims that he was not actually "relieved" from military service by virtue of his application for an alienage exemption, and further argues that he did not make a knowing and intelligent waiver of *all* his rights under the Immigration and Nationality laws. These issues will be addressed in turn.

### I. RELIEF FROM SERVICE AS A CONSEQUENCE OF FILING FOR AN ALIENAGE EXEMPTION

In *Astrup v. Immigration and Naturalization Service*, 402 U.S. 509, 91 S.Ct. 1583, 29 L.Ed.2d 68 (1971), the Supreme Court considered the bargain struck between the United States and one seeking a draft exemption on the basis of alienage, as set out in section 315 of the Act. The Court found that a loss of eligibility for citizenship pursuant to that section could follow only where the alien has applied for an exemption or discharge, *and* he "is or was relieved or discharged" from service. 402 U.S. at 513, 91 S.Ct. at 1585. It then was held that the request for an exemption shall result in a relinquishment of all claims to naturalized citizenship *"only* when the Government abides by its part of the agreement and completely exempts him from service."* 402

dent aliens relying on the treaties for an exemption. The question was finally resolved on December 10, 1971 and Petitioner was formally notified of his reclassification to IV–C status shortly thereafter. In the interim, although the actual classification of Petitioner may have been in doubt, his status as an exempt alien was not.

U.S. at 514, 91 S.Ct. at 1586. Thus, if the government subsequently attempts to draft the alien, voiding his exemption, it has not held to its bargain, and the alien should be released from his bargain as well.

Petitioner, relying on *Matter of Carrelli*, 466 F.Supp. 272 (E.D.N.Y.1979), would apply the teachings of *Astrup* to the facts at hand and have this court conclude that the government has failed in its bargain. This is despite the fact that the Court of Appeals for the Ninth Circuit has indicated that the rule and rationale of *Astrup* must be limited to its facts. *Colombo v. United States*, 531 F.2d 943, 945 (9th Cir. 1975).

In *Carrelli*, which is based on facts similar to those now at issue, the district court held that since the government did not actually reclassify Carrelli as exempt until 1972, at which time he was not likely to be drafted with or without an alienage exemption because of the initiation of the lottery system and his position within the lottery pool, the government did not honor its bargain with Carrelli and he should not be barred from obtaining citizenship on that basis. 466 F.Supp. at 276–77. The court dismissed the facts that Carrelli's request for an exemption resulted in the postponement of pending induction orders and that no steps were taken by the government to induct him after he made his request.

This court does not find the reasoning of *Carrelli* to be persuasive. In *Torres v. Immigration & Naturalization Service*, 602 F.2d 190, 195 (7th Cir. 1979), the Court of Appeals for the Seventh Circuit reached the same conclusion, stating that "to the extent *Carrelli* requires more than an alien's application for relief on the ground of alienage and relief from service on that ground, we decline to follow that case."

■ Moreover, this is not a case like *Astrup* where the government voided an alien's exemption, attempted to induct him, and then later sought to bar him from citizenship. Petitioner knew at the time he filed for an alienage exemption that he could not later obtain citizenship in this country. By filing his claims, he avoided imminent induction, precluded any further attempts to induct him, and ultimately received an exempt classification. He cannot now claim that the government failed to honor its side of the bargain. Despite the fact that his actual reclassification was delayed for several years, he made no effort to clarify his status and he was left by the government to function unfettered in this society.

## II. THE KNOWING AND INTELLIGENT WAIVER OF ALL RIGHTS UNDER THE IMMIGRATION AND NATIONALITY LAWS

■ It is uncontested that petitioner knew and understood at the time he requested an alienage exemption that he would be thereby barred from obtaining United States citizenship. He had been educated in this country and was fluent in English. He now argues, however, that he was not made aware of other consequences of seeking that exemption, notably, a bar to his re–entry to the country on other than a non–immigrant basis, pursuant to 8 U.S.C. § 1182(a)(22), and that since he was not fully informed, he should not be bound by his agreement.

To support this position, petitioner relies on a series of cases interpreting *Moser v. United States*, 341 U.S. 41, 71 S.Ct. 553, 95 L.Ed. 729 (1951), a case in which the Court held that an alien seeking naturalization was not barred by virtue of section 315 of the Act, where he had not been warned of his ineligibility and his own government had advised him that he would not be barred. Those cases generally require that the citizenship bar not be enforced unless the petitioner who had previously claimed an alienage exemption was able to make an intelligent choice after learning the full legal effect of his actions. *See, e. g., Brunner v. Del Guercio*, 259 F.2d 583, 586 (9th Cir. 1958); *Ballestor v. United States*, 220 F.2d 399 (1st Cir. 1955).

Petitioner's argument echoes that already heard and rejected by the Ninth Circuit in *Ungo v. Beechie*, 311 F.2d 905 (9th Cir.), *cert. den.*, 373 U.S. 911, 83 S.Ct. 1301, 10

**714**

L.Ed.2d 413 (1963). Judge Magruder declared in *Ungo* that:

"Appellant having knowingly and intelligently waived his right to become an American citizen, we think it need not also appear that he was expressly advised of all the consequences which might flow from that waiver under other provisions of the Immigration and Nationality Act."

311 F.2d at 907. *Ungo* is consistent with *Moser* in that it allows a bar to citizenship to operate only when that right has been knowingly waived. As there is a knowing and intelligent waiver of that right in this case, *Ungo* dictates that petitioner's second argument must also be rejected.

### CONCLUSION

Petitioner knowingly and intelligently waived his right to become a United States citizen when he elected to gain an exemption from military service in 1967. The government then acted pursuant to his request for an exemption by cancelling an order of induction and eventually placing him in the exempt category. At no time subsequent to his filing did the government attempt to induct petitioner. Having lived up to its side of the bargain, the government is entitled to expect the same from petitioner. Accordingly, the petition for naturalization is hereby denied.