Petition for NATURALIZATION OF Gino SERANO.

Appeal of UNITED STATES of America, on behalf of its agency the IMMIGRATION AND NATURALIZATION SERVICE.

No. 79–2650.

United States Court of Appeals, Third Circuit.

Argued Nov. 4, 1980.
Decided May 28, 1981.

Eric A. Fisher (argued), Crim. Div., Dept. of Justice, James P. Morris, Gen. Litigation and Legal Advice Section, Crim. Div., Chester J. Halicki, Dept. of Justice, Washington, D. C., for appellant.

No appearance or brief on behalf of appellee.

Before ADAMS and SLOVITER, Circuit Judges, and KNOX, District Judge.*

OPINION OF THE COURT

KNOX, District Judge.

This case is before us on an appeal by the government from an order of the District Court for the Eastern District of Pennsylvania granting appellee's petition for naturalization under Section 336 of the Immi-

gration and Nationality Act, 8 U.S.C. § 1447. The facts are fully set forth in the opinion of the district court.

The admitted facts are that Gino Serano, the appellee, was born in Italy on April 22, 1948, and entered this country as a permanent resident on September 2, 1960. In 1966 Serano was classified 1–A, and in April, 1968, he received an order to report for induction on May 3, 1968. He was found medically qualified for induction, but on April 29, 1968, made a request as a permanent resident alien for relief from training and service because of a treaty with Italy (Treaty of Friendship, Commerce and Navigation between the United States and Italy, 63 Stat. 2255, 2272–74.)[1]

After executing the request for exemption from service,[2] Serano received a letter from the Executive Secretary of his local draft board on May 10, 1968 which stated "This is to advise you that your order to report for induction on May 3, 1968 which was issued by this local board on April 19, 1968, has been cancelled."

There is a further letter in the file dated May 9, 1968, to the Chairman of Serano's Local Board 130, signed by Hugh C. Snodgrass, Lieutenant Colonel, AGC Manpower Division, stating, *inter alia*, that the alien status had been recognized by the Director, and instructing the local board to cancel the order to report for induction and to postpone issuance of any order to report for induction until further notice. It also appears that the Board forwarded to Serano a document entitled "Postponement of Induction," which stated:

Your induction into the armed forces is postponed INDEFINITELY.

It further explained:

You will be advised by the local board as to the date you will present yourself to

---

\* Honorable William W. Knox, United States District Judge for the Western District of Pennsylvania, sitting by designation.

1. *See* addendum Article XIII, appellant's brief. The treaty in question was entered into in 1948. It appears to be one of approximately 16 treaties in effect containing relatively similar language concerning reciprocal exemptions from

service of a national of one of the parties in the armed forces of the other.

2. The request contained the words "I have read and understand the provisions of 8 U.S.C. § 1426." For detailed terms of statute see page 6, infra.

this board for delivery for induction after termination of this postponement.

\* \* \* \* \* \*

This postponement shall terminate at any time the reasons therefor shall cease to exist. If the reasons for this postponement should cease to exist, it is your duty to report that fact immediately to this local board.

Of course, the reason for the postponement, namely, the existence of the treaty between the United States and Italy never did terminate. Serano continued, however, classified as I–A until February 18, 1972, when he was reclassified as I–H (not currently subject to processing for induction).

There were no further attempts to have Serano report for induction. He was never classified IV–C [3] which, at least since 1971, would have been the technically correct classification for a person permanently exempt from service on the basis of alienage.

Serano petitioned for naturalization on February 1, 1974, and the examiner entered a report and order on March 30, 1979. In subparagraph (f) of his report, the examiner concluded that the petitioner was relieved from the obligation of military service on the ground that he was a treaty alien and therefore is permanently ineligible to become a citizen of the United States.

The examiner recommended that the petition for naturalization be denied on the grounds that the petitioner had made a

> knowledgeable request for exemption from training and service in the armed forces because of alienage and was completely relieved of the obligation of military service and is therefore barred from naturalization.

It bears mention that in the preliminary examination, before the Immigration and Naturalization Service on August 8, 1975, petitioner, represented by counsel, stated

that in executing the request for deferment at the Italian Consulate in Philadelphia he had read the document which contained the citizenship waiver before signing it. He understood that he was voluntarily renouncing his right to become a citizen, for a number of persons had explained the document to him both before and after he signed it.

The District Court reversed the examiner's findings and ordered that the petition for naturalization be granted.[4] The district judge's decision was largely based upon the opinion of the United States Supreme Court in *Astrup v. Immigration and Naturalization Service*, 402 U.S. 509, 91 S.Ct. 1583, 29 L.Ed.2d 68 (1971), interpreting the alien disqualification statute contained in 8 U.S.C. § 1426. The government filed a timely appeal.

Before discussing the merits, we note that we have had no cooperation from Serano either by way of briefs, appearance for argument or otherwise. The order of the district court was filed October 15, 1979, and the case was appealed immediately by the government. Briefs and an appendix were promptly received from the appellant on February 4, 1980. Nothing was received from appellee although the case was scheduled for argument on November 4, 1980.[5] At that time, consideration of the appeal was postponed because there was no appearance or brief from Serano. Notwithstanding the reluctance of the Court to decide the case when Serano had refused to file a brief or argue the order in his favor, there can be no question of the right of this Court to proceed. Numerous efforts to communicate with Serano were undertaken, and an investigator called at his residence under order of the Court. At that time, Serano expressed his desire to seek naturalization and claimed that he had not received notice of argument from the Clerk. He

---

**3.** 36 Fed.Reg. 23372, 23377, *codified* 32 C.F.R. § 1622.42(b) (1971).

**4.** *See* Memorandum and order, October 15, 1979 at 4.

**5.** Serano's original counsel had withdrawn from the case, and Serano did not replace him.

was then given further time to file briefs and to engage counsel for argument. Under Rule 34 of the Rules of Appellate Procedure, this Court has the right to proceed after fruitlessly endeavoring to secure some representation for an appellee. When Serano failed to respond to the deadline fixed for March 20, 1981, the Court decided not to allow this matter to be left suspended indefinitely.

Although the best argument for Serano is set forth in the opinion of the district judge, that opinion concedes that the case was "not free from doubt." The trial court's opinion concluded that the government had not granted Serano the "full and complete exemption" to which he was entitled under *Astrup v. Immigration and Naturalization Service*, 402 U.S. 509, 91 S.Ct. 1583, 29 L.Ed.2d 68 (1971). However, the Court of Appeals in *In Re Petition of Naturalization of Torres*, 602 F.2d 190 (7th Cir. 1979), which involved circumstances similar to Serano's, held that the actions by the Selective Service Agency constituted the "full and complete exemption" required by *Astrup*. Upon thorough consideration of the matter, we find ourselves in agreement with *Torres*.

The controversy is governed by 8 U.S.C. § 1426, which provides:

(a) Notwithstanding the provisions of section 405(a) of this Act, any alien *who applies or has applied for exemption or discharge from training or service in the Armed Forces* or in the National Security Training Corps of the United States on the ground that he is an alien, and is *or was relieved or discharged from such training or service on such ground, shall be permanently ineligible to become a citizen of the United States.*

(b) The records of the Selective Service System or of the National Military Establishment shall be conclusive as to whether an alien was relieved or discharged from such liability for training or service because he was an alien.

This section of the naturalization laws was enacted June 27, 1952, and represents the decision of Congress that permanent resident aliens should not be unconditionally exempted from military service in time of this country's need, when citizens either naturalized or natural-born are called from their jobs and families to serve their country at great inconvenience and danger to themselves.[6]

The seminal case interpreting 8 U.S.C. § 1426 is *Astrup, supra*. In that case Otto Astrup, a native of Denmark, pursuant to Section 4(a) of the Selective Service Act of 1948, 50 U.S.C. App. § 454(a), had agreed to give up his right to become an American citizen in exchange for the right of the United States to induct him into the Armed Forces. Congress later repealed the law under which he was exempted from military service on the ground of alienage. The new enactment, the Universal Military and Training Service Act of 1951, amended earlier provisions relating to exemption for aliens, so that exemption was no longer available to permanent resident aliens. Thereafter, the Selective Service System attempted to draft Astrup and "would have succeeded in putting him into uniform but for the fact that he was found to be physically unfit for the draft." 402 U.S. at 510, 91 S.Ct. at 1584. When he attempted to become a citizen, the district court denied Astrup citizenship because he had claimed

---

**6.** Such legislation is not inconsistent with treaties granting reciprocal exclusions from military service of the two contracting treaty-making powers with respect to service in the Armed Forces of the other. As the Supreme Court noted in *Moser v. United States*, 341 U.S. 41, 71 S.Ct. 553, 95 L.Ed. 729 (1951):

That the statute unquestionably imposed a condition on exemption not found in the Treaty (between the United States and Switzerland) does not mean they are inconsistent. Not doubting that a treaty may be modified by a subsequent act of Congress, it is not necessary to invoke such authority here, for we find in this congressionally imposed limitation on citizenship nothing inconsistent with the purposes and subject matter of the Treaty.

alienage in seeking exemption from military service.

On appeal the Supreme Court pointed out that there is a two-pronged prerequisite for the loss of eligibility for United States citizenship: (1) the alien must be one who applies or has applied for exemption or discharge from military service; and (2) is or was relieved or discharged from the service. There was no question that Astrup had made such application but the Court held that temporary release from military service was not by itself sufficient to foreclose an alien from later becoming naturalized. The Court held that Congress provided that an alien who requests exemption based on alienage can be held to his agreement to relinquish all claims to naturalized citizenship only when the government abides by its part of the agreement and completely exempts him from service in our armed forces. In *Astrup*, unlike the present case, Congress repealed the law under which Astrup was exempted, thereby "reneging on its part of the bargain with him." 402 U.S. at 510, 91 S.Ct. at 1584. Moreover, the government later attempted to induct Astrup and failed only because he was physically unfit. In the present case, the government neither terminated the treaty under which Serano was exempted from service nor later sought to induct Serano into the Armed Forces. All of the documents signed by the government indicate an indefinite postponement of induction because of Serano's request for exemption under the treaty with Italy. Under such circumstances, we would be elevating form over substance if we were to rule that the effective exemption from service was somehow insufficient on account of the misclassification as I–A instead of IV–C.

In *Torres, supra*, the Seventh Circuit pointed out that the petitioner there, a treaty alien requesting exemption, found himself in a square peg status trying to be fitted into a round hole. At the time Torres sought exemption the exact status of IV–C was not available, but nevertheless, unlike *Astrup*, the Selective Service complied with their obligations under the treaty and did not attempt to induct him. Further, Torres, accompanied by his father, had read and signed the document requesting exemption which explicitly stated that he had read and understood the bar to United States citizenship mandated by 8 U.S.C. § 1426. His induction order was cancelled and he was told he would be advised later regarding his classification. Twenty-seven months later he received a classification card from his local board classifying him IV–C, and the lower court found that he had made a knowing and intelligent waiver of his right to citizenship. The court of appeals pointed out that the second prong of *Astrup* had been satisfied since the government had completely exempted Torres from service in the armed forces on the basis of alienage. The court rejected the contention that because Torres, after requesting exemption, remained for a time classified as I–A, he was not completely exempted from military service. It found that this was not an attempt by the government to renounce its agreement to exempt the petitioner from military service. The Seventh Circuit explained: "Rather it seems clear to us that the I–A classification was a consequence of petitioner's square peg status as a permanent resident alien with a right to exemption from military service under the terms of a treaty not fitting into any of the round hole classifications of deferment and exemptions established by the Selective Service regulations." The court pointed out that Torres was granted an exemption and that realistically he did receive what he had bargained for. As in *Torres*, the government here did not in fact make any attempt to induct Serano

and there is no showing that the government would have inducted him.[7]

In light of the above, we hold that the government has fulfilled its part of the bargain and that it was error to grant citizenship to the petitioner.

Accordingly, the judgment of the district court will be reversed and the matter remanded for the entry of a judgment in favor of the United States Immigration and Naturalization Service upholding its right to exclude Gino Serano from citizenship.

---

7. We have also considered the decision of this Court *In Re Rego's Petition*, 289 F.2d 174 (3d Cir. 1961). There the facts were different. The petitioner after passage of the Immigration Naturalization Act of 1952, signed a new application. He was classified I–A and then inducted. To this extent, the case is very similar to *Astrup.*