Jorge Americo UNGO, Petitioner,

v.

Charles J. BEECHIE, District Director,
San Francisco District, Immigration
and Naturalization Service, Respondent.

No. 17845.

United States Court of Appeals
Ninth Circuit.

Jan. 10, 1963.

Jackson & Hertogs and Gordon G.
Dale, San Francisco, Cal., for petitioner.

Cecil F. Poole, U. S. Atty., and Charles
Elmer Collett, Asst. U. S. Atty., San
Francisco, Cal., for respondent.

Before JERTBERG, MAGRUDER and
BROWNING, Circuit Judges.

MAGRUDER, Circuit Judge.

This is a judicial review, pursuant to
8 U.S.C. § 1105a, as amended, of a deportation order against petitioner issued by
the Immigration and Naturalization
Service. An appeal to the Board of
Immigration Appeals was dismissed.

Petitioner Ungo is a native and citizen
of the Central American country of El
Salvador. He was born June 17, 1930.
On September 9, 1948, he was first admitted to the United States as a "permanent
resident." A year later he registered
under the Selective Service System. He
was classified IV–E, a student. He departed for El Salvador in July, 1950, and
returned two months later, this time as a
non-immigrant student who, in that capacity, was not subject to the Draft Act.
However, petitioner claims that he did
not know that fact, nor did he know the
intricacies of the applicable statute.
Notwithstanding his classification IV–E,
a student, on his return to the United
States in September, 1950, he found
awaiting him the notice calling him to
serve in the United States Army because he was a "permanent resident."
He explained to his draft board that he
was a IV–E student. The Selective Service System thereupon "dismissed my issue to serve in the United States Army".
His classification was changed to IV–C.

In August, 1952, he went to El Salvador and shortly afterwards he came back to the United States, this time for "permanent residence." On October 10, 1952, his draft board classified Ungo I–A.

On October 21, 1952, the El Salvador Embassy at his instance requested the Secretary of State of the United States to approve an application for "deferment."

On February 1, 1953, Ungo wrote to his local draft board, acknowledging the receipt of a letter in which he had been notified of the favorable action by the Department of State on his application for "deferment." In this letter he stated, "therefore, I desire to be classified in class IV–C as a treaty alien." On February 10, 1953, Ungo was put in classification IV–C by his draft board. When the registrant's file was reviewed on May 20, 1953, the director of the Selective Service System having written that "Unless there is already on file a request for relief from military service as a treaty alien by the registrant, he should be required to submit such signed request prior to classification in Class IV–C," Form C–294 was mailed to Ungo. This form set forth the provision of § 315 of the Immigration and Nationality Act of 1952, which is in substance that an alien who applies for exemption from military service on the ground that he is an alien and who is "relieved" from such service on such ground shall be permanently ineligible to become a citizen of the United States. This may seem to some to be a harsh consequence of claiming the exemption, but it is one the Congress is plainly authorized to impose.

The content of § 315 was clearly printed upon the face of Form C–294. The record discloses that appellant is an intelligent person, a college graduate, who has excellent command of the English language. The special inquiry officer who heard the case wrote that appellant was obviously "not being entirely truthful" in saying that he signed the form in ignorance of its provisions. The Board of Immigration Appeals affirmed the finding of the special inquiry officer to the effect that Ungo knew what he was doing when he signed Form C–294 and that he thereby made a "voluntary and intelligent election between eligibility for citizenship and exemption from military service." It does not do to say that appellant had already at the time he signed Form C–294 been granted classification IV–C as a treaty alien, and that hence his signing the form was a superfluity and irrelevant. The state director of the Selective Service System wrote on June 24, 1959, "By signing Form C–294, the registrant remained exempt from training and service in the Armed Forces of the United States and he retained his exempt classification."

Furthermore, factually speaking, the action by the draft board in classifying petitioner in category IV–C as a treaty alien relieved him of service in the army, and, as the Second Circuit said in Petition of Skender, 248 F.2d 92, at 95 (1957), under § 315(a) it is not required that the applicant should be "legally entitled" to be relieved from the service; "it is the fact of relief, not the legal right to it, that is determinative". See to the same effect United States ex rel. Rosio v. Shaughnessy, 134 F.Supp. 217 (S.D.N.Y.1954); In re Carvajal, 154 F. Supp. 525 (N.D.Cal.1957).

Moser v. United States, 341 U.S. 41, 71 S.Ct. 553, 95 L.Ed. 729 (1951), is manifestly inapplicable, for in that case the alien was expressly advised by his consulate that signing the exemption would not affect his eligibility to become a United States citizen; the Supreme Court held that in these circumstances the alien had not "knowingly and intentionally" waived his right to become an American citizen. The present case, on its facts, is quite different.

Another somewhat technical argument made by appellant is that the President of the United States lacked the power to grant exemption from military service to permanent resident aliens after the 1951 amendments to the Selective Service Act of 1948, and therefore that such attempted exemption was a "nullity." We find nothing in § 6(a) of the

1948 Act, as amended in 1951, nor anything in the regulation by the President, 32 CFR 1622 et seq., necessarily contrary to the earlier treaty between the United States and El Salvador. Repeals by implication are not favored by the law. See United States v. Lee Yen Tai, 185 U.S. 213, 22 S.Ct. 629, 46 L.Ed. 878 (1902); Johnson v. Browne, 205 U.S. 309, 27 S. Ct. 539, 51 L.Ed. 816 (1907); Cook v. United States, 288 U.S. 102, 53 S.Ct. 305, 77 L.Ed. 641 (1933). The earlier provisions of the treaty with El Salvador have not been repealed by implication, and we see no objection to applying § 315 of the Immigration and Nationality Act of 1952. We do not see that the holdings in United States v. Rumsa, 212 F.2d 927 (C.A. 7th, 1954), and in Petition of Rego, 289 F.2d 174 (C.A. 3d, 1961), are inconsistent with this conclusion.

■ The last entry of the appellant into the United States occurred on December 19, 1959. It was a mistake to have issued the visa to him at this time under § 212(a) (22), and he should now be deported according to § 241(a) of the Immigration and Nationality Act of 1952. Appellant asserts that the principle of Moser v. United States, supra, 341 U.S. 41, 71 S.Ct. 553, 95 L.Ed. 729, should be applicable here, and that since the record does not indicate that petitioner was ever informed of the danger that if he claimed the exemption under § 315 he would be barred from returning to the United States when he last left this country, he should not be held to have made "a voluntary and intelligent election" under the Act. Appellant having knowingly and intentionally waived his right to become an American citizen, we think it need not also appear that he was expressly advised of all the consequences which might flow from that waiver under other provisions of the Immigration and Nationality Act.

■ We hold also that the Board of Immigration Appeals made no error in its ruling to the effect that the alternative discretionary relief requested under § 212(c) was properly denied by the special inquiry officer on the ground that it is a condition of this section that the alien must have been returning to "a lawful unrelinquished domicile of seven consecutive years". The alien left the United States in 1954 for El Salvador to obtain some "field experience," as he said. However, it appears that at the end of his first employment in El Salvador he received a second job and then a third for a brief period, and he stated at the hearing on February 23, 1961, that he returned to the United States in 1957 only "for vacation." We agree that the alien cannot show that at the time of his 1958 entry he was returning to "a lawful unrelinquished domicile of seven consecutive years".

A judgment will be entered affirming the order of deportation of the Immigration and Naturalization Service.