**In re Petition for Naturalization of Antonio Torres.**

**Antonio TORRES, Petitioner-Appellant,**

**v.**

**IMMIGRATION & NATURALIZATION SERVICE, Respondent-Appellee.**

No. 79–1200.

United States Court of Appeals, Seventh Circuit.

Argued June 5, 1979.
Decided July 17, 1979.

**6**

Curry First, Milwaukee, Wis., for petitioner-appellant.

* Senior District Judge William J. Campbell of the Northern District of Illinois is sitting by designation.

James P. Morris, Criminal Division, Dept. of Justice, Washington, D.C., for respondent-appellee.

Before PELL and TONE, Circuit Judges, and CAMPBELL, Senior District Judge.*

WILLIAM J. CAMPBELL, Senior District Judge.

We are called upon in this case to review a determination of the district court that an alien made a knowing and intelligent waiver of his right to obtain United States citizenship. We are concerned also with the question of whether or not the alien was relieved from military duty by his request such that the government may invoke the alien's waiver as a bar to citizenship. Finding that the district court's waiver determination is supported by the record, and that the alien was relieved from military duty because of his request, we affirm the denial of the alien's petition for naturalization.

Article V of the Treaty of Friendship and General Relations between the United States and Spain, July 3, 1902, 33 Stat. 2105, 2108, provides in part:

"The citizens or subjects of each of the two High Contracting Parties shall be exempt in the territories of the other from all compulsory military service, by land or sea, and from all pecuniary contributions in lieu of such, as well as from all obligatory official functions whatsoever."

Petitioner-Appellant Antonio Torres, a Spanish National admitted to the United States as a permanent resident alien, requested that he be relieved from military service under the terms of the Treaty. In connection with this request Torres executed a document entitled Request by Permanent Resident Alien For Relief From Training And Service In The Armed Forces Of The United States Because Of Alien Status. The provisions of 8 U.S.C. § 1426 [1]

1. 8 U.S.C. § 1426 provides:
   (a) Notwithstanding the provisions of section 405(b) of this Act, any alien who applies

were set forth in the document. Torres acknowledged in the request that he read and understood these provisions.

The record indicates that Torres entered the United States on August 18, 1963, as a permanent resident alien. Together with his mother, stepfather, and other family members he resided in Milwaukee, Wisconsin. On June 17, 1965, Torres registered with the Selective Service Local Board No. 43 in Milwaukee, and two days later he was classified I–A. The record further reflects that on February 8, 1966, Torres submitted an affidavit to Local Board No. 43 in which he requested relief from military service under Article V of the Treaty.

On August 23, 1966, Local Board No. 43 mailed Torres an order requiring him to report for induction in the Armed Forces on September 9, 1966. Three days prior to September 9 the Director of the Selective Service System advised the State Director of Selective Service in Madison, Wisconsin, by letter that Torres did not qualify for classification in Class IV–C (Alien) because Torres was a permanent resident alien. The letter requested that Torres' order to report for induction be cancelled and that the issuance of any order to report be postponed until further notice, provided that Torres sign a request for relief from service in the Armed Forces because of his alien status under the Treaty.

Torres reported for induction as ordered on the morning of September 9. He was not inducted, however, but rather told to report to Local Board No. 43 that afternoon. Accompanied by his stepfather Torres reported to Local board No. 43 as instructed. During a five minute conversation with Local Board No. 43 Clerk Strand,

Torres read and signed the document requesting exemption from training and service in the Armed Forces because of his alien status under the Treaty, and reciting that he read and understood the bar to U.S. citizenship provided by 8 U.S.C. § 1426.

Torres testified before the district court that during the conversation Clerk Strand had told him that notwithstanding his signing the request he could still become a United States citizen if he either married a United States citizen or if he later entered military service. A memorandum made by Clerk Strand on the date Torres signed the request reflects no such erroneous advice, but rather indicates that at the time Torres was very undecided whether to sign the request when he learned that he would be permanently ineligible to become a United States citizen by doing so. The memorandum states that Torres "decided to sign the form because he does not feel it is right to ask him to serve until he is 21." Strand's memorandum indicates that Torres was informed that the induction order was cancelled.

One week later Torres was advised by letter from Local Board No. 43 that his induction order was cancelled since he requested relief, and that he would be advised later regarding his classification. Twenty-seven months later, on December 30, 1968, Torres received a classification card from Local Board No. 43 classifying him in Class IV–C.

The general thrust of petitioner's case before the district court was directed at convincing the court that when Torres signed the request for exemption from military service which contained the bar to citizenship, he did not make a knowing and

---

or has applied for exemption or discharge from training or service in the Armed Forces or in the National Security Training Corps of the United States on the ground that he is an alien, and is or was relieved or discharged from such training or service on such ground, shall be permanently ineligible to become a citizen of the United States.

(b) The records of the Selective Service System or of the National Military Establishment shall be conclusive as to whether an alien was relieved or discharged from such liability for training or service because he was an alien.

intelligent waiver of his right to apply for naturalization. Judge Gordon was not persuaded by the evidence adduced at the *de novo* hearing on the petition,[2] and concluded that Torres had not met his burden of showing an entitlement to citizenship.

In order for the government to invoke the section 1426 bar, an alien must have knowingly and intelligently waived his right to obtain citizenship. *Moser v. United States*, 341 U.S. 41, 47, 71 S.Ct. 553, 95 L.Ed. 729 (1951). Pointing to evidence that at no time prior to September 9, 1966 had he ever seen the form which he signed, that his discussion with Local Board No. 43 Clerk Strand lasted only five minutes, that during the discussion Strand gave him erroneous advice, that parental dominance influenced his decision to sign the form, and that his comprehension of the English language was limited, petitioner contends that as a matter of law his waiver of the right to obtain citizenship was not knowingly and intelligently made. However, there is also evidence in the record to support the district court's finding to the contrary.

At the time he executed the waiver Torres had lived in the United States for three years, and was a graduate of a Milwaukee High School. The fact that he had attained average scores on his Selective Service exams indicates that he had a sufficient comprehension of the English language. Further, the record does not demonstrate any overbearing parental influence restricting petitioner's ability to make free choices. Nor is there anything in the record to suggest that Torres was compelled to sign the waiver form during the five minute discussion with Clerk Strand.

▮ The district court had serious doubt whether Torres was correct in his assertion that Strand had given him erroneous information. Noting that the only evidence of erroneous advice came from petitioner's own testimony, and that Strand's memoran-

dum does not refer to the alleged erroneous advice but rather indicates that petitioner was "very undecided about whether to sign the request . . . when he learned he will become permanently ineligible to become a citizen" and that petitioner "decided to sign the form because he does not feel it is right to ask him to serve until he is 21," Judge Gordon resolved the doubt in favor of the government. We find no basis in the record to disturb this credibility determination. Consequently, we cannot say that the district court's finding and conclusion that Torres made a knowing and intelligent waiver to his right to obtain naturalization is clearly erroneous.

In addition to the *Moser* requirements that an alien's waiver of his right to obtain citizenship be knowingly and intelligently made, 8 U.S.C. § 1426 involves a "two-prong prerequisite for the loss of eligibility for United States citizenship. The alien must be one who 'applies or has applied for exemption or discharge' from military service and 'is or was relieved or discharged' from that service." *Astrup v. Immigration Service*, 402 U.S. 509, 512–13, 91 S.Ct. 1583, 1585, 29 L.Ed.2d 68 (1971). As in *Astrup* there is no question in this case that the first prong of the test has been met, for Torres clearly applied for exemption from military service. With respect to the second prong, the *Astrup* Court said: "We think that Congress used the words 'is or was relieved' to provide that an alien who requests exemption from the military service be held to his agreement to relinquish all claims to naturalized citizenship *only* when the Government abides by its part of the agreement and completely exempts him from service in our Armed Forces." *Id.*, 513–14, 91 S.Ct. 1585–86 (emphasis in original).

Although not presented to the district court, Torres contends here that under the Selective Service statutes and regulations pertaining to permanent resident aliens he

2. Prior to the proceedings in the district court a Designated Naturalization Examiner had recommended that the naturalization petition be denied.

was never completely exempted from military service as required by *Astrup,* and therefore the government cannot invoke his waiver of the right to naturalization. Petitioner's argument begins with the observation that in 1951 Congress amended Section 6(a) of the Selective Service Act of 1948 [3] to except those aliens admitted to permanent residence in the United States from the exemption from registration and service provided for certain categories of aliens to be specified by the President. The argument continues that the regulations [4] establishing the classifications for registrants and providing for a Class IV–C classification for permanent resident treaty aliens was revoked in 1956 by Executive Order 10659, 21 F.R. 1079, 1082. Torres concludes by asserting that because there was no Selective Service statute *or regulation* applicable to his status as a permanent resident alien with a right to exemption from military service under the terms of a treaty, and because under such circumstances he could not be classified in any category other than I–A (available for service) during the relevant time period, he was never completely exempted from military service such that the government may invoke the bar to citizenship provided in 8 U.S.C. § 1426.

■ We reject this contention. The fact that for twenty-seven months petitioner was classified I–A with his initial induction order cancelled and further orders to report for induction postponed was not a consequence of the government's attempt to renounce its agreement to exempt Torres from military service. Rather, it seems clear to us that the I–A classification was a consequence of petitioner's square-pegged status as a permanent resident alien with a rig'.1t to exemption from military service under the terms of a treaty not fitting into any of the round-holed classifications of deferment and exemptions established by the Selective Service regulations.[5] Despite the confusion over his classification status, the fact remains that petitioner applied for an exemption from service and was granted that exemption. To argue that he did not receive what he bargained for ignores the reality of this case. No contention is made that the government would have inducted Torres in spite of his request for relief under the treaty. · Nor does the record show that the government in fact tried to induct Torres after he requested relief from service. Rather than focus on petitioner's classification, we believe it is more realistic to focus on the fact that the relief which petitioner requested in exchange for his waiver was accorded to him. *Ungo v. Beechie,* 311 F.2d 905, 906 (9th Cir.), *cert. denied,* 373 U.S. 911, 83 S.Ct. 1301, 10 L.Ed.2d 413 (1963); *In re Skender's Petition,* 248 F.2d 92, 95 (2nd Cir. 1957).

In support of his contention petitioner relies heavily on *Matter of Carrelli,* 466 F.Supp. 272 (E.D.N.Y.1979), *appeal pending,* 79–6095 (2nd Cir.). In that case the district court concluded under circumstances similar to the instant case that a permanent resident treaty alien's retention in Class I–A after the request for relief accompanied by

---

**3.** The Selective Service Act of 1948, 62 Stat. 604, 50 U.S.C. App. § 451 *et seq.* provided in Section 6(a) that persons in "categories to be specified by the President, residing in the United States, and who have not declared their intention to become citizens of the United States, shall not be required to be registered under section 3 and shall be relieved from liability for training and service under section 4(b)." The Universal Military Training and Service Act, P.L. 51 (June 19, 1951), 65 Stat. 75, 83, amended this language to read as follows: ". . . persons in other categories to be specified by the President who are not citizens of the United States, shall not be required to be registered under section 3 and shall be relieved from liability for training and service' under section 4, except that aliens admitted for permanent residence in the United States shall not be so exempted."

**4.** 32 C.F.R. Section 1622.42(c) (1951) provided: "In Class IV–C shall be placed any registrant who is an alien and who is certified by the Department of State to be, or otherwise establishes that he is, exempt from military service under the terms of a treaty or international agreement between the United States and the country of which he is a national."

**5.** 32 CFR Section 1622.10 (1967) required the Selective Service to place in Class I–A all registrants not eligible for classification in another class.

the waiver of right to naturalization was "inconsistent with the type of permanent, total exemption from military service envisioned by *Astrup, supra.*" *Id.*, at 275–76. Although factually distinguishable[6] from the instant case, to the extent *Carrelli* requires more than an alien's application for relief on the ground of alienage and relief from service on that ground, we decline to follow that case.

Under Article VI, clause 2 of the United States Constitution, treaties are part of the Supreme Law of the Land and, although Congress may clearly abrogate by subsequent legislation provisions of a treaty, "the intention to abrogate or modify a treaty is not to be lightly imputed to the Congress." *Menominee Tribe of Indians v. United States*, 391 U.S. 404, 412–13, 88 S.Ct. 1705, 20 L.Ed.2d 697 (1968). Furthermore, treaties should not be deemed to have been abrogated or modified by statute unless the purpose of Congress to do so has been clearly expressed. *Cook v. United States*, 288 U.S. 102, 120, 53 S.Ct. 305, 77 L.Ed. 641 (1933). In this regard we note that Congress did not refer to the treaty at all in the legislative history of the 1951 amendments to the Selective Service Act of 1948.

We conclude that the 1951 amendments to the Selective Service Act of 1948 are not inconsistent with and do not abrogate petitioner's right under Article V of the Treaty of Friendship and General Relations between the United States and Spain to be exempt from military service in this country. As the opinion of the Attorney General of the United States on the subject points out, the 1951 amendment of Section 6(a) of the Selective Service Act of 1948 is a limitation only on the statutory authority of the President to exempt presidentially specified categories of aliens not exempt under any other law from registration and service, with the exception that the President may not exempt permanent resident aliens. Section 6(a) as so amended only prevents the President from exempting permanent resident aliens pursuant to that section; it does not say that such aliens are non-exempt under any provision of law, such as a treaty. *See*: 42 Op.Atty.Gen. 373 (1968).

We thus conclude that Local Board No. 43 could and in fact did exempt petitioner from liability for training and service upon his application. We further conclude that for this reason the government could properly invoke the statutory bar to naturalization set forth in 8 U.S.C. § 1426.

For the foregoing reasons the judgment of the district court denying the petition for naturalization is affirmed.

AFFIRMED.

---

**6.** The petitioner in *Carrelli* may well have been relieved from military service because during the two years following his request for exemption while he remained in Class I–A the government instituted a random selection procedure (lottery system), and his lottery number was not reached during his year of vulnerability to induction. *Carrelli, supra*, 466 F.Supp. at 274–275. In contrast to the circumstances of this case, the lottery system could not serve effectively to relieve Torres from military service because Torres was classified IV–C on December 30, 1968, almost one year prior to the first lottery drawing on December 1, 1969.