Joseph **GRAMAGLIA**,
Plaintiff-Appellant,

v.

**UNITED STATES** of America,
Defendant-Appellee.

No. 1098, Docket 84–6150.

United States Court of Appeals,
Second Circuit.

Argued May 6, 1985.
Decided June 26, 1985.

S. Bernard Schwarz, New York City, for plaintiff-appellant.

Miles M. Tepper, Asst. U.S. Atty., E.D. N.Y., Brooklyn, N.Y. (Raymond J. Dearie, U.S. Atty., E.D.N.Y., Michael P. DiRaimondo, Sp. Asst. U.S. Atty., E.D.N.Y., Brooklyn, N.Y., of counsel), for defendant-appellee.

Before MESKILL, KEARSE and WINTER, Circuit Judges.

MESKILL, Circuit Judge.

This is an appeal from an order of the United States District Court for the Eastern District of New York, Bramwell, J., denying appellant Joseph Gramaglia's Petition for Naturalization. The petition was denied on the basis of section 315(a) of the Immigration and Naturalization Act of 1952, 8 U.S.C. § 1426(a) (1982), which provides that any alien who applies for and is granted an exemption from military duty on the ground that he is an alien shall be permanently ineligible to become a United States citizen. For the reasons that follow, we affirm.

## BACKGROUND

Joseph Gramaglia was born in Italy on July 26, 1948. He entered the United States as a lawful permanent resident on September 9, 1963. On March 6, 1968, Gramaglia was inducted into the United States Army. Some time before July 26, 1968, he received orders to go to Vietnam. Rather than go to Vietnam, Gramaglia decided to secure a release from the Army. To accomplish this goal, he went to the Italian Consulate in New York City. There, on July 26, 1968, he signed a petition to be released from military duty. J.App. at 77. The basis of the petition was Article XIII of the February 2, 1948 Treaty of Friendship, Navigation and Commerce between Italy and the United States of America. Article XIII exempts nationals of one nation from compulsory service in the armed forces of the other nation. J.App. at 4.

In response to Gramaglia's petition, the Adjutant General wrote to the Commanding Officer of the United States Army Transfer Station, Fort Wadsworth, New York. The letter informed the Commanding Officer of Gramaglia's request and ordered him to interview Gramaglia and have him sign the appropriate discharge form. J.App. at 78. Gramaglia was interviewed and on August 26, 1968 he signed a form entitled "REQUEST BY PERMANENT RESIDENT ALIEN FOR RELIEF FROM

TRAINING AND SERVICE IN THE ARMED FORCES OF THE UNITED STATES BECAUSE OF ALIEN STATUS." The first two paragraphs of the form state that Gramaglia is an Italian National and that pursuant to a treaty between Italy and the United States he requests a discharge from the United States Army. The third paragraph of the form states:

I have read and understand the provisions of [section 315 of the Immigration and Nationality Act of 1952,] 8 U.S.C.A. 1426, which provides:

(a) Notwithstanding the provisions of section 405(b) of this Act, any alien who applies or has applied for exemption or discharge from training or service in the Armed Forces or in the National Security Training Corps of the United States on the ground that he is an alien, and is or was relieved or discharged from such training or service on such ground, shall be permanently ineligible to become a citizen of the United States.

J.App. at 79. Gramaglia was honorably discharged on August 27, 1968 and on September 6, 1968 a copy of the above form was forwarded to the Bureau of Immigration and Naturalization Service (INS).

On June 8, 1981, the INS received an "Application to File Petition for Naturalization" from Gramaglia. A Petition for Naturalization was subsequently filed and a hearing before a Naturalization Examiner was held in May 1983. By an opinion dated February 8, 1984, the examiner recommended to the district court that Gramaglia's petition be denied. The basis of the recommendation was Gramaglia's discharge from the Army on the ground of alienage and the subsequent bar to citizenship created by section 315. In an oral opinion rendered on March 22, 1984, the district court also found section 315 controlling and granted the government's motion to deny Gramaglia's petition. An or-

der to that effect was entered on April 13, 1984.

## DISCUSSION

On appeal, Gramaglia raises the three claims he brought before the district court: (1) the Army's failure to advise him of the collateral consequences of being denied citizenship voids his waiver; (2) the waiver may be disaffirmed because at the time Gramaglia signed the discharge form he was a minor; and (3) section 315 denies aliens who claim an exemption from military service equal protection of the laws. In addition to these three claims, Gramaglia argues for the first time on appeal that section 315 does not apply to those aliens who claim exemptions under a treaty (treaty aliens).[1] We find all of these claims meritless.

### 1. *Intelligent Waiver*

■ To be valid, an alien's waiver of his eligibility to become a United States citizen must be knowing and intentional. *Moser v. United States*, 341 U.S. 41, 47, 71 S.Ct. 553, 556, 95 L.Ed. 729 (1951). Gramaglia admits that when he signed the discharge form he understood that he was permanently waiving his right to become a United States citizen. He claims, however, that his waiver was not knowing because the collateral consequences of being denied citizenship were not fully explained to him.

■ Courts have consistently rejected the argument Gramaglia raises, holding that all that is required for a knowing waiver of citizenship under section 315 is that the alien understand that the price for exemption from military service is ineligibility for citizenship. *See, e.g., Ungo v. Beechie*, 311 F.2d 905, 907 (9th Cir.), *cert. denied*, 373 U.S. 911, 83 S.Ct. 1301, 10 L.Ed.2d 413 (1963); *In re Javkin*, 500 F.Supp. 711, 713–14 (N.D.Cal.1980); *In re*

---

1. One week after the scheduling order for this appeal had been issued, Gramaglia sought a remand to present this new argument to the

district court. He stated that this argument had been "overlooked." Finding no justification for a remand, we denied his motion.

*Calvo,* 161 F.Supp. 761, 762–64 (D.N.J. 1958). Gramaglia's attempt to distinguish these cases on the ground that he was a minor at the time the waiver was executed is unconvincing. When he signed the waiver, Gramaglia was a twenty year old high school graduate who could read and write English. He knew that by signing the request for discharge he would be permanently ineligible to become a United States citizen; *Moser* requires no more than that.

### 2. *Minority*

■ Gramaglia also contends that because he was a minor at the time he signed the discharge form, he may avoid the consequences of his "contract" of separation from the Army under the common law infancy doctrine. Apart from its other substantive failings, this argument has a foundational flaw. For although Gramaglia cites authority for the proposition that agreements between enlisted men and the military should be subject to traditional contract principles, *see, e.g., Cinciarelli v. Carter,* 662 F.2d 73, 78 (D.C.Cir.1981), he cites no authority to support the proposition that such agreements may be disaffirmed under the infancy doctrine. In fact, the Supreme Court has twice held that with respect to military matters a person of sufficient age to enter the military may not avail himself of the infancy doctrine. *United States v. Williams,* 302 U.S. 46, 48–50, 58 S.Ct. 81, 82–83, 82 L.Ed. 39 (1937) (infancy doctrine could not be used to void minor serviceman's cancellation of military insurance contract); *In re Morrissey,* 137 U.S. 157, 159, 11 S.Ct. 57, 34 L.Ed. 644 (1890) (minor's enlistment effectuated change of status and the enlistment contract was not voidable under the infancy doctrine). Thus, following *Williams* and *Morrissey,* we hold that Gramaglia may

not rely on the infancy doctrine to disaffirm his discharge "contract."

### 3. *Equal Protection*

■ The final argument Gramaglia raises on appeal that was also placed before the district court is an equal protection claim. He argues that section 315 denies aliens equal protection of the laws because under that section an alien who uses his alienage to secure an exemption from military service is automatically barred from citizenship, while under section 314, 8 U.S.C. § 1425 (1982), an alien who deserts during peacetime is not automatically barred from becoming a citizen.[2] At oral argument Gramaglia's counsel characterized this argument as "tenuous;" we characterize it as frivolous. Section 314 and section 315 are aimed at wholly different conduct and any distinctions they create between different groups of aliens are rationally related to a legitimate governmental interest. *See Francis v. INS,* 532 F.2d 268, 273 (2d Cir.1976). Thus, we reject Gramaglia's equal protection claim.

### 4. *Applicability of Section 315*

For the first time on appeal, Gramaglia argues that section 315 does not apply to this case. He claims that in enacting section 315 Congress did not intend to make treaty aliens like him ineligible for citizenship.

■ Having failed to raise this issue below, Gramaglia is barred from raising it on appeal. *Schmidt v. Polish People's Republic,* 742 F.2d 67, 70 (2d Cir.1984). However, even if the issue had been raised below, it would avail appellant nothing. Section 315 clearly applies to treaty aliens. The language of section 315 is straight-forward: "any alien who applies [for and is granted an exemption or discharge from military service] on the ground that he is

---

**2.** Section 314 merely provides that an alien who deserts or avoids the draft during time of war is ineligible for citizenship. It does not state that an alien who evades or flees military service during peacetime is automatically entitled to citizenship. In fact, in addition to the jail term

that a peacetime evader faces, he may still be barred from citizenship because he lacks good moral character, attachment to the principles of the Constitution or disposition to the good order and happiness of the United States. 8 U.S.C. § 1427 (1982).

an alien ... shall be permanently ineligible to become a citizen." Gramaglia is an alien; he applied for an exemption on the ground that he was an alien; and he was granted a discharge on that ground. Thus, under the plain language of section 315 he is permanently ineligible for citizenship.

In accordance with the section's plain language, circuit courts have applied section 315 to treaty aliens for thirty years. *See, e.g., In re Serano*, 651 F.2d 178, 181 (3d Cir.1981); *Torres v. INS*, 602 F.2d 190, 193 (7th Cir.1979); *Ungo v. Beechie*, 311 F.2d at 906; *United States v. Kenny*, 247 F.2d 139, 142–43 (2d Cir.1957); *Ballester v. United States*, 220 F.2d 399, 405 (1st Cir.), *cert. denied*, 350 U.S. 830, 76 S.Ct. 62, 100 L.Ed. 741 (1955); *see also* Exemption of Resident Aliens From Military Service Pursuant to Treaties—Bar to Eligibility for Citizenship, 42 Op.Att'y Gen. 373 (1968). Appellant points to no authority that has questioned section 315's applicability to treaty aliens.

Gramaglia argues, however, that there is legislative history that makes the applicability of section 315 to treaty aliens ambiguous. This argument is unconvincing. "If the statutory language is unambiguous, in the absence of 'a clearly expressed legislative intent to the contrary, that language must ordinarily be regarded as conclusive.'" *United States v. Turkette*, 452 U.S. 576, 580, 101 S.Ct. 2524, 2527, 69 L.Ed.2d 246 (1981) (quoting *Consumer Product Safety Commission v. GTE Sylvania, Inc.*, 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980)). Unfortunately for Gramaglia, section 315 is quite clear and the legislative history he points to as indicating a contrary legislative intent is quite ambiguous. Thus, there is no reason to depart from the plain words of section 315 which show no intention on the part of Congress to exempt treaty aliens from the reach of the citizenship bar.

The order of the district court denying Gramaglia's Petition for Naturalization is affirmed.