Giovanni DICICCO,
Petitioner–Appellant,

v.

U.S. DEPARTMENT OF JUSTICE IMMIGRATION & NATURALIZATION SERVICE, Respondent–Appellee.

No. 88–1199.

United States Court of Appeals,
Sixth Circuit.

Argued Feb. 23, 1989.

Decided April 26, 1989.

David K. Wenger (argued), Detroit, Mich., for Giovanni Dicicco.

L. Michael Wicks, Asst. U.S. Atty. (argued), Andrew Balanger, I.N.S., Detroit, Mich., for I.N.S.

Before KEITH, JONES and GUY, Circuit Judges.

RALPH B. GUY, Jr., Circuit Judge.

Petitioner, Giovanni Dicicco, appeals the district court's order denying his petition for naturalization. The district court concluded, as the designated naturalization examiner did before him, that Dicicco is permanently barred from naturalization under section 315 of the Immigration and Nationality Act, 8 U.S.C. § 1426, because of his discharge from military service on the basis of alienage. Dicicco concedes that he received a discharge based on alienage, but claims that his lack of proficiency with the English language precluded him from knowingly and intelligently acquiring that discharge with its attendant permanent bar to United States citizenship. For the reasons that follow, we must affirm.

Petitioner, Dicicco, lawfully immigrated to the United States for permanent residence from Italy in 1966 when he was nineteen years old. At that time he had a sixth or seventh grade education. Dicicco, his friends, and family spoke only Italian. He worked with other Italian-speaking men, laying cement floors for basements in houses. Dicicco was inducted into the army in July 1968 after an unsuccessful attempt, approximately four months earlier, to be voluntarily inducted. He allegedly was rejected by the army initially because of his lack of proficiency with the English language.[1] Dicicco's limitations with the English language were attested to by his American wife, Karen Dicicco, and his long-time friend, Mike Bacitto, who also immigrated from Italy and subsequently became a naturalized citizen. Dicicco explains his subsequent acceptance by the army by noting that the standards of induction were lowered pursuant to "McNamara's Project 100,000"—a project designed to secure needed manpower for the war.

Dicicco served in the army for eleven months. According to his affidavit, Dicicco was severely hampered by his difficulties with English. He was unable to complete written army forms, but successfully completed eight weeks of basic training by emulating others and because he had no physical impairments. Dicicco was rated "excellent" following his basic training and admitted some improvement with English language "army words." He was subsequently sent to Fort Jackson and placed in a mechanic's class but was unable to complete an administered test because, unbeknown to the lieutenant who scolded him for "screwing up," he could not read or

---

1. Dicicco's claim is supported by his military records which reflect that he was administered the Armed Forces Qualifications Test on March 6, 1968, well before his induction date of July 3, 1968. His induction records, however, indicate that he was not rejected previously by the army.

write English. Dicicco's language barrier left him frustrated, lonesome, and friendless. At least two of his supervisors suggested that he did not belong in the army. Concerned that his language barrier might cause him to make a serious mistake, Dicicco began seeking a discharge. On a leave taken prior to being shipped to Germany, Dicicco learned that his mother had conferred with representatives in the Italian Consulate about his difficulties and was advised that they would check into it.[2]

While in Germany, Dicicco's difficulties continued until May 19, 1969, when he was summoned by army officials to an office where he was presented with prepared discharge papers authorizing his discharge on the basis of his alien status. Although he admittedly was advised that whether to take the discharge was entirely his decision, he allegedly had no idea that taking the discharge would preclude him from becoming a United States citizen. Dicicco thought that the basis for his discharge was his difficulties with English. He voluntarily took the discharge. Dicicco claims to have trusted the army officials who had prepared the papers because he did not know what the papers said and did not know enough English to ask questions. He received an honorable discharge on May 30, 1969.

Dicicco contends that he thought he acquired citizenship incident to serving in the army and notes that his discharge papers indicate that he is a United States citizen. When he subsequently discovered that he was not a citizen, Dicicco postponed taking the citizenship test for over fourteen years because he felt he could not write or speak English sufficiently to pass.

Dicicco married in 1971, and has two children. He began taking correspondence courses and, after eight years, received his high school equivalency degree. He filed a petition for naturalization in March 1984. A naturalization examiner reviewed his petition and recommended its denial solely on the basis of 8 U.S.C. § 1426, which bars naturalization for persons discharged from military service on the basis of alienage. The district court, following an evidentiary hearing, denied Dicicco's petition for naturalization. Dicicco now appeals.

## I.

As an initial matter, we note that naturalization proceedings are essentially judicial proceedings, *Tutun v. United States*, 270 U.S. 568, 575–76, 46 S.Ct. 425, 426, 70 L.Ed. 738 (1926), and that exclusive jurisdiction to naturalize persons as United States citizens is vested in various federal and state courts. 8 U.S.C. § 1421. Thus, although 8 U.S.C. § 1446(a) requires, absent a waiver, an employee of the Immigration and Naturalization Service or of the United States designated by the Attorney General to conduct preliminary examinations upon naturalization petitions pending before a naturalization court and to make recommendations on petitions to such courts, it is the court that bears responsibility for decisions granting or denying a petition for naturalization. 8 U.S.C. § 1446(d); *In re Kwong Hai Chew*, 278 F.Supp. 44 (S.D.N.Y.1967).

In accordance with Federal Rule of Civil Procedure 52(a), we must accept the factual findings of the district court unless they are clearly erroneous:

> "[A] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 [68 S.Ct. 525, 542, 92 L.Ed. 746] (1948). This standard plainly does not entitle a reviewing court to reverse the finding of the trier of fact simply because it is convinced that it would have decided the case differently. The reviewing court oversteps the bounds of its duty under Rule 52(a) if it undertakes to duplicate the role of the lower court.
>
> . . . .

---

**2.** Although Dicicco claims that he personally had no contact with the Italian Consulate, his affidavit in support of his petition for naturalization suggests otherwise.

When findings are based on determinations regarding the credibility of witnesses, Rule 52(a) demands even greater deference to the trial court's findings; for only the trial judge can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding of and belief in what is said. *See Wainwright v. Witt,* 469 U.S. 412 [105 S.Ct. 844, 83 L.Ed.2d 841] (1985)....

*Anderson v. Bessemer City,* 470 U.S. 564, 573–75, 105 S.Ct. 1504, 1511–12, 84 L.Ed.2d 518 (1985).

In *Taylor and Gaskin, Inc. v. Chris–Craft Industries,* 732 F.2d 1273 (6th Cir. 1984), however, we noted that "[t]his court may review *de novo* findings of ultimate facts which result from the application of legal principles to subsidiary factual determinations; moreover, conclusions of law are excluded from the clearly erroneous standard of Rule 52(a), and are therefore also subject to the *de novo* review of this court." *Id.* at 1277 (citation omitted).

## II.

■ It is not disputed that 8 U.S.C. § 1426 bars citizenship for persons who receive a military discharge based on alienage. Section 1426 states:

§ 1426. Citizenship denied alien relieved of service in armed forces because of alienage; conclusiveness of records

(a) Notwithstanding the provisions of section 405(b) of this Act, any alien who applies or has applied for exemption or discharge from training or service in the Armed Forces or in the National Security Training Corps of the United States on the ground that he is an alien, and is or was relieved or discharged from such training or service on such ground, shall be permanently ineligible to become a citizen of the United States.

(b) The records of the Selective Service System or of the National Military Establishment shall be conclusive as to whether an alien was relieved or discharged from such liability for training or service because he was an alien.

It is also not disputed that Dicicco obtained his discharge by signing a "REQUEST BY PERMANENT RESIDENT ALIEN FOR RELIEF FROM TRAINING AND SERVICE IN THE ARMED FORCES OF THE UNITED STATES BECAUSE OF ALIEN STATUS." That form reiterates the provisions of 8 U.S.C. § 1426 barring eligibility for citizenship for persons obtaining a discharge from military service based on alienage. What is disputed is whether Dicicco's lack of proficiency with the English language precluded him from knowingly and intelligently waiving his eligibility for naturalization when he elected to be discharged from military service.

In *Moser v. United States,* 341 U.S. 41, 47, 71 S.Ct. 553, 556, 95 L.Ed. 729 (1951), the Supreme Court held that a Swiss native was not barred from citizenship notwithstanding his having procured an exemption from military service on the basis of alienage. In that case, the exemption was sought pursuant to an 1850 treaty between the United States and Switzerland freeing citizens of each country residing or established in the other country from personal military service. When petitioner was classified in the United States as I–A, he sought deferment in accordance with the 1850 treaty. At that time, section 3(a) of the Selective Training and Service Act, as amended, 50 U.S.C.App. § 303(a), allowed aliens to be exempt from military service but precluded those who sought exemption from becoming a citizen of the United States. Petitioner, however, had explicitly sought to be "unconditionally" released from military service pursuant to the treaty. The Swiss legation in Washington intervened on petitioner's behalf and, after consultation with the United States Department of State and Selective Service Department, advised him to complete and submit an enclosed "revised" Selective Service Form DSS 301 to his local board. He was further advised that signing the form would not constitute a waiver of his eligibility for United States citizenship. Although the standard DSS 301 form contained an acknowledgement that exemption from military service on the basis of alien-

age debars the applicant from citizenship, the petitioner in *Moser* signed a "revised" form omitting this language. In considering whether petitioner was barred from citizenship by virtue of his military service exemption, the Court noted that, "as a matter of law, the statute [conditioning exemption on debarment from citizenship] imposed a valid condition on the claim of a neutral alien for exemption; petitioner had a choice of exemption and no citizenship or no exemption and citizenship." *Id.* at 46, 71 S.Ct. at 556. Nevertheless, the Court noted that, prior to signing the exemption application, the petitioner had sought to exercise an *unconditional* right to exemption and that the Department of State had orchestrated a revised procedure for claiming the exemption on a form that omitted the waiver of citizenship language. The Court further recognized that petitioner would not have signed the exemption application if it meant sacrificing his eligibility for citizenship. Accordingly, the Court determined that in signing the exemption form, petitioner justifiably relied on the advice of the highest United States authority available to him and of the Swiss legation, and that any waiver of eligibility for citizenship incidental to acquiring a military exemption based on alienage had to be made knowingly and intentionally.[3]

 The government here seeks to limit the *Moser* requirement for a knowing and intentional waiver of citizenship eligibility upon electing an exemption or discharge from military service based on alienage to cases with estoppel or entrapment-type facts akin to *Moser*. To that end, it cites cases affirming citizenship debarment when petitioners knowingly sought exemption based on alienage notwithstanding the petitioners' protestations that because the consequences of the elected exemption were not explained to them or because language barriers precluded their understanding of the consequences, no knowing and intelligent waiver of citizenship eligibility occurred. *See, e.g., Assi v. United States*, 498 F.2d 1064 (5th Cir. 1974); *Keil v. United States*, 291 F.2d 268 (9th Cir.1961); *Kahook v. Johnson*, 273 F.2d 413 (5th Cir.1960). Because Dicicco does not allege estoppel, entrapment, or that he was otherwise misled by the government, the government maintains that *Moser* is unavailing to him.[4]

In contrast to the government's position is language in *Moser* itself: "There is no need to evaluate these circumstances on the basis of any estoppel of the Government or the power of the Swiss Legation to bind the United States by its advice to petitioner. Petitioner did not knowingly and intentionally waive his rights to citizenship." 341 U.S. at 47, 71 S.Ct. at 556. Moreover, *Moser's* knowing and intentional waiver requirement has been followed in other cases. For example, in *Gramaglia v. United States*, 766 F.2d 88 (2d Cir.1985), the court recognized the *Moser* standard and noted that "all that is required for a knowing waiver of citizenship ... is that the alien understand that the price for exemption from military service is ineligibility for citizenship." *Id.* at 90.[5] Similarly, in *In re Koplin*, 204 F.Supp. 33 (D.Colo.1962),

---

**3.** The apparent reason why the maxim "ignorance is no excuse" is not applied in this context is because waiver forms such as that signed by Dicicco are most often executed by aliens with "little understanding of our customs, mores, law and language, and who are thus apt to lack a realization that by a stroke of the pen they are forever renouncing a most precious status." *In re Koplin*, 204 F.Supp. 33, 36 (D.Colo.1962) (citing *Machado v. McGrath*, 193 F.2d 706 (D.C.Cir. 1951), *cert. denied*, 342 U.S. 948, 72 S.Ct. 557, 96 L.Ed. 705 (1952)).

**4.** The government also supports its contention that a knowing waiver is the exception rather than the rule by citing cases holding that 8 U.S.C. § 1426 applies retroactively to naturaliza-

tion petitions prior to the passage of the Immigration and Nationality Act of 1952. *See, e.g., United States v. Bazan*, 228 F.2d 455 (D.C.Cir. 1955). Although the government is correct about the retroactive effect of section 1426, we note that section 3(a) of the Selective Training and Service Act of 1940, as amended, 50 U.S.C. App. § 303(a), contained similar provisions which were interpreted in *Moser* as requiring a knowing and intentional waiver of citizenship eligibility. *Moser*, 341 U.S. at 42 n. 5, 71 S.Ct. at 554 n. 5.

**5.** In *Gramaglia*, the petitioner was determined to have made a knowing and intentional waiver of citizenship eligibility.

the court referred to *Moser* and several other cases in which a petition for naturalization otherwise precluded by 8 U.S.C. § 1426 required consideration of whether the waiver of citizenship was executed knowingly and intentionally. *Id.* at 36–37. *See also Memishoglu v. Sahli,* 258 F.2d 350 (6th Cir.1958) (alien's attempt to challenge deportation on basis of language difficulties leading to unknowing waiver of eligibility for United States citizenship when he signed Form DSS 301 requesting military exemption based on alienage rejected because petitioner had lived in the United States over five years, nearly completed college, and was employed in industry).

The district court's view that the *Moser* standard is applicable and determinative of the parties' rights in the present case was conceded by the parties in the prior proceeding and is supported by the law, notwithstanding the existence of contrary authority. Even if we were to accept this more liberal interpretation of *Moser,* however, we nevertheless conclude that the district court's finding that Dicicco knowingly and intentionally waived his citizenship is not clearly erroneous.

### III.

The crux of Dicicco's argument on appeal is that although he did sign the papers authorizing his discharge, he had no idea that he was simultaneously waiving his eligibility for citizenship. Hence, his waiver was not knowing and intentional. The district court noted that Dicicco must establish that his waiver was not knowing or intentional, at least by a preponderance of the evidence. In fact, *Berenyi v. District Director, INS,* 385 U.S. 630, 636–37, 87 S.Ct. 666, 670–71, 17 L.Ed.2d 656 (1967), indicates that Dicicco must establish his eligibility for citizenship by clear, convincing, and unequivocal evidence.[6] To that end, in addition to Dicicco's language difficulties, Dicicco points to his Armed Forces Qualification Test (AFQT) score and his General Technological Test (GTT) score, which indicate he was not suitable for army service due to his language problems.[7] He also notes that the discharge papers were prepared for him in advance without his input, and that he merely signed where instructed without any explanation as to *precisely* what he was signing or waiving.

Dicicco relies primarily on *In re Koplin,* 204 F.Supp. 33, to support his position. In that case, the court held that an alien who understood only elementary English when he signed an application for exemption from military service based on alienage and who knew that he would confront "difficulties" in obtaining citizenship as a consequence of his exemption but who did not understand and was not advised that he would remain forever ineligible for citizenship, was not rendered permanently ineligi-

6. In *Berenyi,* the Court noted that:
 When the Government seeks to strip a person of citizenship already acquired, or deport a resident alien and send him from our shores, it carries the heavy burden of proving its case by "clear, unequivocal, and convincing evidence." But when an alien seeks to obtain the privileges and benefits of citizenship, the shoe is on the other foot. He is the moving party, affirmatively asking the Government to endow him with all the advantages of citizenship. Because that status, once granted, cannot lightly be taken away, the Government has a strong and legitimate interest in ensuring that only qualified persons are granted citizenship. For these reasons, it has been universally accepted that the burden is on the alien applicant to show his eligibility for citizenship in every respect. This Court has often stated that doubts "should be resolved in favor of the United States and against the claimant." *E.g., United States v. Macintosh,*

283 U.S. 605, 626 [51 S.Ct. 570, 576, 75 L.Ed. 1302] [1931].
 385 U.S. at 636–37, 87 S.Ct. at 670–71 (footnotes omitted).

7. According to army regulations in effect during 1965–1969, the GTT tests general ability, including one's understanding of written directions or instructions. A registrant with a score between 10 and 30 on the AFQT must obtain a minimum score of 80 on the GTT and a minimum of 90 on any other two aptitude tests administered by the army. Dicicco's AFQT score was "10" and his GTT score was "75." Hence, Dicicco's test scores indicated he was unacceptable for induction. Although the regulations provide for other procedures and inquiries in processing non-English speaking registrants or English speaking registrants who cannot read or write English, Dicicco claims that no other procedures were undertaken in his case.

ble as a consequence of signing the exemption application. Thus, even though the application form recited 8 U.S.C. § 1426, the court determined that the petitioner's extremely limited knowledge of English precluded his understanding of what he was signing. Hence, the court concluded that the evidence failed to establish an "intelligent and informed waiver of citizenship." *Id.* at 37.

The district court, following an evidentiary hearing, denied Dicicco's petition for naturalization "[f]or the reasons stated in the record." Although Dicicco challenges the court's opinion as lacking findings of fact and conclusions of law, the court effectively adopted the findings and conclusions articulated in the record, including those stated in the recommendation submitted by the designated naturalization examiner and in the evidentiary hearing. Although the examiner did not comment on the issue of a knowing and intentional waiver, the issue was addressed at the evidentiary hearing. The evidence adduced on cross-examination of Dicicco at that hearing tends to refute Dicicco's claim and indicates that by the end of his eight weeks of basic training, Dicicco had learned a lot of army words and his English was "getting better all the time." Additionally, Dicicco served eleven months of "honorable service," during which time all of the orders and directives of his superiors were given in English. His conduct and efficiency during basic combat training at Fort Knox and thereafter were deemed "excellent," notwithstanding Dicicco's protestations that he flunked reading and writing tests. Additionally, Dicicco was promoted while in the army and advanced from a pay grade of one to a pay grade of three. The district judge also elicited from Dicicco that, prior to his entering the army, he had obtained a driver's license, which requires a written test in English.[8] Moreover, he noted that, notwithstanding Dicicco's scores on army tests, he had to be able to read and write somewhat in order to obtain any score at all. The district court was not persuaded

that Dicicco could obtain army promotions (i.e., from mechanic apprentice to mechanic helper), yet be unable to understand what he was being told. Moreover, the district court found it inconsistent that Dicicco could read sufficiently to determine that his discharge papers listed him as a United States citizen but insufficiently to understand the nature or consequences of his execution of the exemption application. Although Dicicco relies on his alleged rejection by the army prior to his induction as evidence of his inability to execute a knowing and intentional waiver of citizenship, the district court noted that Dicicco's induction papers indicate that he was *not* previously rejected by the army.

For these reasons, the district court concluded that Dicicco failed to meet his burden of proving that his waiver of citizenship eligibility was not knowing or intentional. Accordingly, it denied his petition for naturalization. Because we cannot say that the district court's findings supporting its conclusion are clearly erroneous, or that its conclusion is incorrect as a matter of law, we AFFIRM.

---

**8.** Dicicco states that he fraudulently obtained his driver's license through a scheme involving a coded dictionary instructing him which answer to circle based on the test number he was administered.