Khaled Y. ABOUD, Plaintiff,

v.

IMMIGRATION AND
NATURALIZATION SERVICE,
Defendant.

Civ. A. No. C–1–93–473.

United States District Court,
S.D. Ohio,
Western Division.

Dec. 15, 1994.

Douglas Shaw Weigle, Bartlett & Weigle, Cincinnati, OH, for plaintiff.

Gerald Francis Kaminski, U.S. Dept. of Justice, Cincinnati, OH, for I.N.S.

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND DECISION

SHERMAN, United States Magistrate Judge.

This is a civil appeal for which both parties have consented to entry of final judgment by a United States Magistrate Judge. At issue. is whether the United States Justice Department's Immigration and Naturalization Service ("INS") acted correctly in denying plaintiff's petition for naturalized citizenship. These Findings of Fact and Conclusions of Law, written pursuant to 8 U.S.C. § 1421(c), follow a one-day hearing *de novo*, at which the parties presented both testimony and oral argument.

### I. Findings of Fact

The relevant facts of this matter are as follows: Plaintiff, a Jordanian citizen born in 1962, was admitted to the United States as a nonimmigrant student in 1982. Shortly thereafter, he began full-time studies at Onondaga Community College in Syracuse, New York. At Onondaga—where his courses and exams were in English—plaintiff studied, *inter alia*, macro and micro economics, freshman composition, and principles of management, receiving a "B" in each course. J.Ex. J at 1. Plaintiff then transferred to Utica College, a division of Syracuse University. At Utica—where, again, the curriculum was in English—plaintiff studied, among other courses, written communication and expository writing, subjects for which he received a "C+" and "C," respectively. J.Ex. K at 1. In 1990, plaintiff received a bachelor's degree from Utica in construction management.[1]

While a college student, plaintiff had three contacts with law enforcement. The first occurred while he was working part-time at "Ma White's," a convenience store where alcohol was sold. In March 1987, plaintiff plead guilty to selling alcohol to a minor, and was fined $100. J.Ex. B at 1–2. The second incident took place in October 1988, when plaintiff plead guilty to the unlawful possession of marijuana, and was again fined $100. *Id.* at 2. The third happened in September 1990, when plaintiff was arrested for the criminal possession of a machine gun, a charge later dismissed. *Id.*

During this time, plaintiff was married to an American citizen, and divorced. As a result of his marriage, plaintiff qualified to become a permanent resident alien. Following the statutory residency period, he applied for citizenship.

To become a naturalized citizen in the United States, a permanent resident alien must complete a twelve-part INS form known as an "application for naturalization," swear to its accuracy, and undergo an examination by an INS adjudications officer. In part seven, question 15(b) of the naturalization form, plaintiff was asked whether he had ever "been arrested, cited, charged, indicted, convicted, fined or imprisoned for breaking

---

1. This conclusion is based on plaintiff's testimony. The Court notes that plaintiff's degree status is not reflected on his official transcript. *See* J.Ex. K.

or violating any law or ordinance excluding traffic regulations?". J.Ex. A. at 3. Plaintiff was not truthful about his past criminal history, and answered "no" to this question. *Id.* He should have answered "yes," and, as required by the form, explained in detail his answer. *See id.* Plaintiff was also less than truthful in answering part four of the form. There, plaintiff failed to disclose, as part of his past five-year employment history, the fact that he worked at Ma White's, the place of business associated with his first arrest.

In a subsequent interview with adjudications officer Kim Adams, plaintiff was placed under oath and asked each of the questions contained on the naturalization form. In response, plaintiff gave false answers, as he had done in writing, both to question 15(b) and to the part four question concerning his employment history. In addition, when asked by officer Adams—at the conclusion of the exam and before signing the form—to swear that each of his written answers were correct, plaintiff was not truthful, and answered "yes."

Following a routine FBI criminal records check conducted thereafter, officer Adams determined that plaintiff answered question fifteen dishonestly.[2] Accordingly, plaintiff's naturalization petition was denied on the grounds that he lacked the "good moral character" necessary for citizenship. J.Ex. C. *See generally* 8 U.S.C. § 1427(a)(3). When given thirty days in which to challenge that finding, *see* J.Ex. C at 1, plaintiff, through counsel, submitted an affidavit explaining his supposed misunderstanding of the question. J.Ex. D. In response, the INS reopened plaintiff's naturalization petition, and provided him with an additional fifteen days to gather evidence in his favor. J.Ex. E. Plaintiff's request for a hearing was subsequently denied, as was his naturalization petition. J.Exs. F, G. The INS later formally dismissed plaintiff's administrative appeal, J.Ex. I at 6; this appeal followed.

## II. Conclusions of Law

Jurisdiction over this appeal is premised on 8 U.S.C. § 1421(c), which provides that the Court's review shall be *de novo.*

A permanent resident alien seeking naturalization cannot be found to possess the "good moral character" necessary for citizenship if he or she "has given false testimony for the purpose of obtaining any [immigration] benefit[ ].. . ." 8 U.S.C. § 1101(f)(6). "Testimony," as defined, is limited to "oral statements made under oath." *Kungys v. United States*, 485 U.S. 759, 780, 108 S.Ct. 1537, 1551, 99 L.Ed.2d 839 (1988). Such false, oral testimony need not relate to a material fact; as the Supreme Court explained in *Kungys*, the statute "means precisely what it says," so that "even the most immaterial of lies with the subjective intent of obtaining immigration or naturalization benefits" will justifiably prevent a finding of good moral character. *Id.* at 779–80, 108 S.Ct. at 1551 (sentence order reversed). *Accord id.* at 780, 108 S.Ct. at 1551 (stating the § 1101(f)(6) inquiry as whether "there is a subjective intent to deceive, no matter how immaterial the deception").

The burden to prove good moral character rests with plaintiff, and need be shown by clear, convincing and unequivocal evidence. *Dicicco v. United States Dep't of Justice, INS*, 873 F.2d 910, 915 (6th Cir. 1989). Any doubts in that regard must be resolved against plaintiff, and in favor of the INS. *See Berenyi v. District Director, INS*, 385 U.S. 630, 637, 87 S.Ct. 666, 671, 17 L.Ed.2d 656 (1967).

## III. Decision

As the above recitation of facts reveals, plaintiff has not satisfied his burden. The evidence of record establishes, without question, that plaintiff gave false testimony—orally, under oath, and to adjudications officer Adams—not once, but three times: first, when, in response to her question regarding his employment for the past five years, he failed to disclose his Ma White's job; second, when asked whether he had ever been arrested or fined, or had performed other conduct specified in question 15(b), he answered

---

2. Apparently, officer Adams did not learn of plaintiff's dishonesty regarding the employment history question until the hearing *de novo,* when plaintiff revealed, for the first time, his Ma White's employment. To that end, the Court notes that plaintiff made the same false omission in his sworn answers to defendant's first set of interrogatories. *See* J.Ex. M at 3.

"no" when, in fact, the correct answer was "yes"; third, when asked whether the answers he gave on the written INS naturalization form were accurate and complete, he answered "yes," when the truthful answer was "no." The evidence also reveals that plaintiff gave such false testimony in order to obtain an immigration benefit, *i.e.*, naturalized citizenship.

Plaintiff's only argument to the contrary—that his incorrect answer to question 15(b) arose from his misunderstanding of the question—fails in light of his command of the English language, as demonstrated not only by his college studies and grades, but by his courtroom testimony. Moreover, even if the Court assumes, *arguendo*, that this argument has merit, the argument leaves unexplained why plaintiff failed to tell officer Adams his true employment history.

In view of the fact that both prongs of § 1101(f)(6) are thus met, and plaintiff found to lack the good moral character necessary for naturalized citizenship, the INS's administrative decision denying him such immigration relief is **AFFIRMED.**

**IT IS SO ORDERED.**